## MILLER et al. v. NEWTON et al.

The effect of a marriage, at common law, is to deprive the wife of all separate legal existence, rendering herself incapable of binding herself by a contract.

Courts of Equity, however, for many purposes, treat the husband and wife as distinct persons, capable of contracting with and suing each other, and of having separate estates, debts, and liabilities.

Where a married woman, having a separate estate, creates debts with the intention of making those debts payable out of and a charge on her separate estate, a Court of Equity will decree the debts a charge on that separate estate, and direct it to be sold under the rules of the Court, in such manner as may be equitable, and the proceeds to be applied in payment of the debts.

This liability of the separate property of a married woman, can only be enforced in a suit in equity, where all interested can be made parties, and a decree rendered directly against the property for the payment of the debt, and no personal judgment can be recovered against the wife.

In such actions, to make the debts of a married woman a charge on her separate

estate, Courts of Equity are careful in guarding her against imposition, and in seeing that dealings with her, affecting her separate estate, are free from fraud, and reasonable in their terms, and that no unfair advantage has been taken of her.

APPEAL from the District Court, Seventh Judicial District, Sonoma County.

The complaint in this case averred the partnership of plaintiffs, and its style, and that at divers and sundry times between the twenty-eighth of March, 1858, and the thirteenth of March, 1861, plaintiff sold and delivered to the defendant America S. Newton (acting by the name of America S. Tate), at her request, divers goods, wares, and merchandise, food and raiment for the support of herself and family, and for the benefit and advantage of her separate estate, as described in said complaint. That the indebtedness due from her to plaintiffs for goods, etc., by her purchased of them, was a running account, extending through the period stated. It also alleged, that Mrs. Newton purchased said goods, etc., with the special promise and agreement on her part that she would be responsible and pay for the same out of her separate estate described, and that the price thereof should be a charge on said separate estate, and that she appointed her estate as security for the payment of her accruing indebtedness; and that plaintiffs, relying on her representations and promises, and upon the credit of such estate, sold and delivered to her the goods, etc., and that there was due thereon an amount thereof of $1,516.67.

2. The complaint also stated that the firm of Pauli & Co., also sold and delivered to Mrs. Newton, who purchased, in her name of America S. Tate, goods, wares, merchandise, food, raiment, and necessaries for the support and maintenance of herself and family, upon her request, and upon the like representations above mentioned, and that she became indebted to such firm in the sum of seven hundred and ninety-six dollars and forty-two cents, and which demand such firm assigned for value to plaintiffs, before this action was commenced.

3. The complaint further stated, that on the ninth of January, 1859, America S. Tate intermarried with defendant Russell Newton; and that she and her husband lived together only three or four

Miller *v.* Newton.

days, when they separated, and in a few days thereafter the said Russell left the country. That said Russell had no property then, but was insolvent, and so continued to be. That at no time has he exercised, or claimed the right to exercise any control or management of his wife's separate property, but, on the contrary, always denied and disclaimed all right or intention so to do, and disclaimed any interest in such property.

4. The complaint also stated, that at the time of and after said marriage, Mrs. Newton requested said firms respectively to keep her accounts as they had before then been kept, without change of name or responsibility, and assured them that she had sufficient property to pay them for what she had purchased and might purchase, and would pay them therefor out of her separate estate.

5. The complaint then contains a statement and description of Mrs. Newton's separate property, upon the credit of which she purchased the goods of plaintiffs, and of Pauli & Co., their assignors, and which she specified and appointed as a security for the payment of the debts which she had so contracted.

6. The plaintiffs then pray for a judgment and decree, charging the separate property of Mrs. Newton with and for the payment of the two demands above mentioned, and that such property may be applied to the payment of such demands, and also that a receiver may be appointed to take charge of such separate property, and dispose of it, or so much of it as shall be necessary to satisfy said demands.

*George L. Wratten,* Attorney, and *John Currey,* of Counsel, for Appellants.

It being impossible for Courts, proceeding upon the principles of the common law, to recognize a *femme covert* as capable of entering into contracts which could bind her, it became necessary, in order that she might be protected in her property, and that she might, to every needful extent, be enabled to enjoy it, to recognize her separate existence, and thus to invest her, as to her separate estate, with the power to subject it to her use and enjoyment; and to that end the doctrine of the civil law on the subject came to be incorporated into the jurisprudence of England, nearly or quite

two centuries ago.   (Story's Eq. Jur. 1, 2 ; 1 Spence's Eq. Jur. 595–598.)

By the civil law, the husband and wife were and still are considered as distinct persons, and may have separate estates, contracts, and debts.   (1 Black. Com. 444 ; Fonb. Eq. B. 1, Ch. 2, Sec. 6 ; 2 Story's Eq. Secs. 1367, 1368, 1399–1401.)   The extent to which a married woman, having a separate estate, might enter into contracts and incur liabilities that would bind her separate property, has been a fruitful theme of forensic and juridical discussion in the Courts of Chancery in America and England ; but that she is competent to enter into valid and binding engagements for her personal benefit, and for the benefit of her separate estate, is a doctrine that may be regarded as firmly established.   It is the law of Courts of Equity, that a *femme covert*, in respect to her separate property, is to be considered a *femme sole*.   By the law applicable to the subject, we believe the propositions following herein to be well established, as well on principle as by authorities :

1st.   The respondent, Mrs. Newton, was competent to make the contracts entered into after her marriage, as mentioned and set forth in the complaint in this action, and thereby she incurred liabilities binding on her ; and her separate property may be charged in equity for the debts contracted by her, as alleged, both before and after her marriage with Russell Newton ; and such separate property may, under the decree of the Court, be disposed of for the payment and satisfaction of the demands due from her to the appellants.

When the case of *Yale* v. *Dederer* was first in the New York Court of Appeals (18 N. Y. 274–276), Comstock, C. J., after noticing the earlier decisions of the English Courts of Chancery, as well as the cases of *Murray* v. *Barlee* and *Owen* v. *Dickinson*, said : " The principle, in short, which now governs in cases of this kind is, that a wife's separate estate is liable to pay her debts during coverture, in whatever form they are incurred, not because her contracts have any validity at law, nor by way of appointment or charge, but because equity decrees it to be just that they should be paid out of such estate."   Again, " If the promise is on her own account, if she or her estate receive a benefit, equity will lay hold of those circumstances to respond to the engagement."   (Id. 276.)   And

again, " Courts of Equity, proceeding *in rem*, will take hold of her estate, and appropriate it to the payment of her debts." Thus it appears that in order to subject the estate of a *femme covert* to the payment of debts, by her contracted for her own benefit or for that of such estate, it is not necessary to imply that she made any direct appropriation or appointment of it as a security for such payment, nor that such estate became charged, by reason of the contract, with a specific lien as security for the performance of her obligation.

A *femme covert*, having a separate estate, has power to contract debts that may bind her to the extent of her property; and when a Court of Equity undertakes to give effect to her obligations, by laying hold of the separate property as the means by which they are to be satisfied, as said by Lord Cottenham and reiterated by Chief Justice Comstock, the lien on such property is created by the decree of the Court.

2d. The *corpus* of the respondent's real estate, as well as the rents and profits of it, and as well as her personal property, may be subjected, and the avails thereof applied, under the decree of the Court, for the payment and satisfaction of her debts.

The Courts of Chancery of England, where the wife's separate estate was merely an equitable estate (the legal title to which was usually vested in trustees), limited the relief afforded to a creditor, against the separate estate of a married woman, to an application by her trustees of her personal property, and the rents and profits of her real estate.

The Constitution of the State of Texas, Art. 7, Sec. 19, is the same as our Constitution, Art. 11, Sec. 14, on the same subject. (Hartley's Dig. 73.)

In *Womack* v. *Womack* (8 Tex. 413), Hemphill, C. J. said: " That a married woman holds her property by as high, as full, and as perfect a title as does her husband his separate property, is a proposition not to be questioned." And at page 415, he decided that the wife had the right to pay her debt out of either the *corpus* or profits of her separate estate; that she might be sued for its recovery, and, on judgment, the decree would be that the execution be levied on her separate property; that the Court had the power

Miller *v.* Newton.

to direct the proceeds to be first applied to the satisfaction of the debt; and, if they were insufficient, that then the amount due should be made out of the *corpus* of the property. And, in the leading and ably-considered case of *Cartwright* v. *Hollis* (5 Tex. 156), the same learned Judge, after declaring that the right of the wife to separate property was guaranteed by the Constitution (Id. 170), said: " In some cases, the question of whether the capital or rents and profits. of the separate estate are liable to the charges, has been much discussed. When the wife has the entire interest in the estate, the *corpus* as well as the issue of the estate would no doubt be liable. In this case, the application is for payment out of the property, or out of the rents or profits. If the latter be sufficient, they should, doubtless, and properly, be first subjected to the charge; if not, the capital should be appropriated for that purpose."

In the case of *Van Maren* v. *Johnson and Wife*, this Court held, that the judgment obtained might be enforced against the separate property of the wife; by which we understand, that the separate property of the wife, whether real or personal, might be sold to satisfy the judgment.

*William Ross*, for Respondent.

The complaint is uncertain. No description of the goods, etc., is given. There is no allegation as to who composed the " family " of the respondent, whether they were adults or minors; nor whether they possessed means sufficient for their own support, or whether it was the duty of or proper for the respondent to furnish their support.

In the absence of a description of the goods, etc., sold, the Court cannot determine whether they were necessaries, or whether they were for the benefit of the separate estate of the respondent; and, there being no averment of the character and situation of the family, it cannot be determined by the Court, whether the respondent has a family, or whether she was under any obligation whatever to support or furnish necessaries for the parties for whom she purchased the goods. If it was not her duty to support the family, or if the articles furnished were not necessaries, nor for

the benefit of her separate property and estate, we think it is well settled that her separate real estate, at least, cannot be charged with debts thus incurred.

In *Maynard* v. *Johnson* (1 Hill. Ch. 228), it was held, that the Court would " inquire into the propriety of an express charge, and not allow the wife to charge her estate by her own mere act and will, without evidence that it was necessary, or at least proper."

A married woman cannot dispose of or change her separate estate, even by her consent in Court, unless in the mode prescribed by the instrument creating her separate property.   (10 Ves. 585, 586.)

The expression of a particular mode of creating a lien on the separate property of the wife, denies and excludes any and all other modes of doing it.   She can make no contract to bind her, except in the manner prescribed by law.   (*Selover* v. *Am. R. Com. Co.*, 7 Cal. 266 ; *Barrett* v. *Tewksbury*, 9 Id. 13 ; *Pearce* v. *Barbiers*, 10 Id. 436.)

In *Jaques* v. *The M. E. Church* (17 Johns.), so much relied on by the appellants' counsel throughout his entire argument, was the case of a *femme covert* acting under a deed of settlement, where the question was, whether Mrs. Jaques, " with respect to her separate estate, is not to be regarded in a Court of Equity as a *femme sole*, and may not dispose of her estate as she pleases, without regard to her trustee, there being nothing in the deed of settlement requiring the consent or concurrence of her trustee, nor any negation of an unlimited power of disposition of the estate by her."

We contend that the statute answers this proposition, by requiring not only that the disposition must be in writing, but must also be signed and acknowledged in the manner pointed out by the statute.

The first proposition made by the appellant may be divided : First, was the respondent competent to make the contract entered into with the appellants after marriage ?  and, second, can her separate property be charged in equity for the debts contracted by her before her marriage ?

We contend, that by the Constitution, and the statute made in pursuance thereof (Wood's Dig. 488, Sec. 6), the respondent,

during coverture, could not create any lien upon or incumber her separate property, unless by an instrument in writing, signed and acknowledged in the manner prescribed in the statute. If she is absolutely forbidden to create such lien directly by her own act, or by parol, she is restrained from creating such lien or incumbrance in any other manner than by an instrument in writing, with the concurrence of her husband.

This statute is not only intended to protect the wife from undue influence of her husband, but to guard her property from the attacks of any other person.

This statute is " a new chapter in the Statute of Frauds," and does not come under the reasoning of the Court in *Murray* v. *Barlee* (4 Simons, 82) ; but, even in the argument of Lord Brougham in that case, it is said, that as to her separate estate, the wife is to be considered as a *femme sole*, " unless restrained by positive and binding law to a particular mode of disposition." (3 Myl. & K. 223.) Can the Court create a lien upon the separate property, that by no possibility, either by mortgage, confession of judgment, or otherwise, could the wife herself have created ?

In *Ingoldsby* v. *Juan* (12 Cal. 579), the Court sustained the validity of the Act of the seventeenth of April, 1850, and said " it was designed to fulfill the requirements of the Constitution, more clearly to define the rights of married women."

As to the second point contained in appellants' brief : Can the separate property of the respondent be charged, in equity, for debts contracted by her before her marriage ? The appellants, by stating, in the complaint, that the respondent, after her marriage, promised to pay her debts contracted *dum sola*, seem to rely upon that subsequent promise to sustain the position assumed of her liability. If the complaint relied upon the previous promises, made at the time of the several purchases, the Statute of Limitations might have been pleaded in bar of the action on the account ; for, in *Richie, Osgood & Co.* v. *Davis* (5 Cal. 453), this Court says : " When there have been various charges in a store account, and no reciprocal charges by the other party, each charge in the account becomes barred by the Statute of Limitations." The complaint is uncertain as to the promise relied upon ; but, from the

argument made by the appellants' counsel, we must conclude they stand upon the one entered into subsequent to the marriage. This promise is not binding. It is within the Statute of Frauds. (*Fairbanks* v. *Dawson*, 9 Cal. 89.)

We do not doubt but that, by an action of law, if not barred by the Statute of Limitations, the appellants might have recovered a judgment for the contract debts of the respondent incurred before marriage, according to her liability as fixed by statute, as determined in the case of *Van Maren* v. *Johnson* (15 Cal. 309), and have execution ordered against her separate property.

We deny the appellants' second proposition, that " the *corpus* of the respondent's real estate, as well as the rents and profits of it, as well as her personal property, may be subjected, and the avails thereof applied, under the decree of the Court, to the payment and satisfaction of her debts."

The case of *Van Maren* v. *Johnson et al.*, so much depended on by appellants, is not in point; for that was an action at law, and depended upon the construction of the statute, which declares that the separate property of the wife shall be and continue liable for her debts contracted *dum sola;* and upon the question whether the common law was not in full vigor as to the further liability of the common property, acquired after marriage, for the payment of such debts—this latter proposition being by this Court decided in the affirmative.

The true doctrine is laid down by the Master of the Rolls, in *Aylett* v. *Ashton* (1 Myl. & Cr. 105–111), in this language: " Although a *femme covert* has power, and the Court has jurisdiction, over the rents and profits of her separate property, no case has given effect to her contracts against the *corpus* of her separate estate." The cases are not limited to her " general engagements."

CROCKER, J. delivered the opinion of the Court—NORTON, J. concurring—COPE, C. J. dissenting.

This is an action to recover, from the separate estate of a married woman, debts contracted by her, both before and since her marriage. The husband was made a party with the wife, but he was defaulted. The wife appeared and demurred to the complaint, on

the ground that the same did not state facts sufficient to constitute a cause of action, and for uncertainty. The Court sustained the demurrer, and rendered judgment against the plaintiffs, from which they appeal.

The complaint avers that Mrs. Newton purchased goods of the plaintiffs and their assignors, at various times from March 28th, 1858, to March 13th, 1861, for the support of her family and for the benefit and advantage of her separate estate, forming a running account during that period. That on the ninth day of January, 1859, she intermarried with her present husband, but they lived together only a few days when they separated, and he soon left the country ; that these purchases were made with the special promise and agreement on her part that she would pay for the same out of her separate estate, and that they relied upon these promises and upon the credit of her separate estate in selling the goods ; that at the time of and after her marriage she requested them to keep her accounts the same as they had been kept before, without change of name or responsibility, and promised to pay them therefor out of her separate estate, which is described in the complaint. The complaint prays for a judgment for the amount due, and that the separate property of the wife may be applied to the payment of the demands sued for, and that for that purpose a receiver might be appointed to take charge and dispose of the separate estate.

At common law, the effect of a marriage was to deprive the wife of all separate legal existence, her husband and herself being deemed at law but one person. One result of this principle was, that at law she was incapable of binding herself by a contract. But the hardship of the rule was found so great that exceptions were made to it even at law. Thus, if the husband became *civili-tur mortuus,* or even transported for a term of years, or had been abroad and unheard of for seven years, or even had left the State without the intention of returning, it was held that she could contract in her own name and was liable to be sued alone thereon. (1 Chitty's Pl. 28, 57, and notes.) Still, with all the modifications of the rule, the Common Law Courts continued to maintain it to a most rigorous extent.

But Courts of Equity have laid down rules upon this question

more in accordance with the spirit of modern civilization and the principles of justice. In doing so, they have followed, to a great extent, the more liberal doctrines of the civil law. In determining the question raised in this case, we must look to the rules laid down by Courts of Equity as our guide. They, for many purposes, treat the husband and wife as distinct persons, even capable of contracting with and suing each other, and of having separate estates, debts, and liabilities. The wife is held capable of taking, holding, and disposing of real and personal property to her own separate and exclusive use. Although her property is often, by the instruments conveying it, vested in trustees to manage for her use, yet this is not essential, and Courts of Equity will always protect her interest in property against the marital rights and claims of the husband, even though there be no trustee. And, if necessary, the husband will be held to be her trustee, and her rights enforced against him as though he were a stranger. And it can make no difference how her separate estate was derived, whether before or after marriage. (2 Story's Eq. Secs. 1368, 1378, 1380.) To a very great extent, equity considers a married woman, so far as relates to her separate property, the same as though she was not married. (2 Story's Eq. Sec. 1397.)

In accordance with these principles, her separate estate will, in equity, be held liable for all the debts, charges, incumbrances, and other engagements which she expressly or by implication charges thereon. Her agreement to that effect is not considered as an obligatory contract, but rather as an apportionment out of her separate estate. (2 Story's Eq. Sec. 1399.) Her direct expression of an intention to charge her separate estate with the debt is deemed sufficient to create such a charge; and the mere fact that the debt has been contracted by her during the coverture, for herself or even for her husband, or for the joint benefit of both, will generally be held as *prima facie* evidence sufficient to charge her separate estate, without any proof of a positive agreement so to do. The simple point to ascertain is, whether it was her intention to make her separate estate liable for the debt; and that intention may be ascertained either from her direct agreement to that effect, or from the circumstances of the case, by which it may be fairly inferred

that such was her intention.  (2 Story's Eq. Sec. 1400; *Peacock*
v. *Monk*, 2 Ves. Sr. 190; *Huline* v. *Tenant*, 1 Brown, 17; *Owen*
v. *Dickenson*, 1 Craig & Phillips, 48; *Murray* v. *Barlee*, 3 Mylne
& Kune, 208, 223; *Jaques* v. *Methodist Episcopal Church*, 17
J. R. 577; *Gardner* v. *Gardner*, 22 Wend. 526.)

In the case of *Murray* y. *Barlee*, the Chancellor says: " In all
these cases I take the foundation of the doctrine to be this: the
wife has a separate estate subject to her own control, and exempt
from all other interference or authority.  If she cannot affect it no
one can, and the very object of the settlement which vests it in her
exclusively is to enable her to deal with it as if she were discovert.
The power to affect it being unquestionable, the only doubt that can
arise is whether or not she has validly incumbered it.  At first, the
Court seems to have supposed that nothing could touch it but some
real charge, as a mortgage or an instrument amounting to an exe-
cution of a power, where that view was supported by the nature of
the settlement.  But afterward her intention was more regarded,
and the Court only required to be satisfied that she intended to deal
with her separate property.  When she appeared to have done so,
the Court held her to have charged it, and made the trustees an-
swer the demand thus created against it."  The Chancellor, Lord
Brougham, then proceeds to examine the question, whether this
intention must be expressed in writing, saying: " If, in respect to
her separate estate, the wife is, in equity, taken as a *femme sole*,
and can charge it by instruments absolutely void at law, can there
be any reason for holding that her liability, or more properly, her
power of affecting the separate estate, shall only be exercised by a
written instrument?  Are we entitled to invent a rule, to add a
new chapter to the Statute of Frauds, and to require writing when
that act requires none?  Is there any equity reaching written deal-
ings with the property which extends not also to dealings in other
ways, as by sale and delivery of goods?  Shall necessary supplies
for her maintenance not touch the estate, and yet money furnished
to squander away at play be a charge on it, if fortified by a scrap
of writing?  No such distinction can be taken upon any conceiva-
ble principle."

But it must be borne in mind that while a Court of Equity is

thus liberal in sustaining the power of a married woman over her separate estate, yet they are equally careful in guarding her against imposition, and therefore all dealings with her affecting her separate estate must be free from fraud, reasonable in their terms, and it must appear that no unfair advantage has been taken of her. (*Jaques* v. *M. E. Church*, 17 Johns. 579; *Evans* v. *Llewellyn*, 2 Brown's C. C. 150.)

Applying these principles to the present case, we find that the complaint avers that she purchased the goods for the support of herself and family, and for the benefit and advantage of her separate estate, and that she directly and expressly agreed that she would pay for the same out of her separate estate, and that the amount should be a charge on her separate estate. These facts bring the case clearly within the established rules of equity upon this subject, and her separate estate is liable in equity for the payment of the plaintiff's demand.

The mere fact that this agreement is not in writing, can make no difference, as there is no statute or rule of law which requires that an agreement of this character, which is enforceable only in a Court of Equity, should be in writing.

The respondent refers to the cases of *Selover* v. *The American Russian Com. Co.* (17 Cal. 266), *Barrett* v. *Tewksbury* (9 Id. 13), and other decisions of this Court, founded upon the statute relating to conveyances of property by a married woman. Those cases relate to the power of a married woman to execute instruments conveying or incumbering her separate property, and the mode in which such conveyance or incumbrance must be executed and acknowledged to be binding upon her, and they therefore differ entirely from the case now before us, in which no such question is directly involved. The statutes upon this subject, and upon which those decisions were founded, do not in any way abrogate or impair the powers of a Court of Equity, over the rights and property of married women, or the long-established rules of those Courts upon this subject, upon which this case depends. While these statutes confer upon married women a power to dispose of their property, which they did not before possess, yet there is no expression of any legislative intention to thereby divest Courts of Equity of their long

Miller *v.* Newton.

established powers and jurisdiction. To effect such an object would require a clear expression of legislative will.

These statutes are a substitute for the ancient common law proceeding by fine and recovery, which was the only mode by which, at common law, a married woman could convey her real estate. (2 Kent's Com. 139.) Those proceedings were tedious and expensive, and the statutory mode is simple and equally effectual. The jurisdiction of Courts of Equity over the property of married women existed when a fine and recovery were the only modes of conveying their real property at common law; and they equally exist, notwithstanding this change in the mode of conveyance. In a Court of Equity the separate property of the wife can be disposed of under a judgment of a competent Court, for the payment of her just debts; and under the proceedings her rights and interests will be fully and carefully guarded and protected better than by the ancient common law mode, or that prescribed by the statute. By the statute, the husband is constituted her protector, by requiring him to join with her in executing the conveyance. Under the rules of equity, the Court acts as the guardian of her rights. The statute was designed to enable her to deal directly with her property, without being compelled to resort to a Court, either of common law or equity; and it cannot be held, by any reasonable implication, to have deprived Courts of Equity of their jurisdiction over cases where the statute might be ineffectual, or where they had long exercised authority.

The present case is an example of the necessity of maintaining the powers of the Court over this subject intact. The husband of the defendant, it seems, left the State or deserted her soon after their marriage; and thus she is powerless, even if willing, to execute a conveyance of or incumbrance upon her property in the mode required by the statute. With abundance of property, she cannot directly dispose of it, even to purchase the necessaries of life; and unless a Court of Equity has the power to afford relief, she may suffer from want in the midst of abundance. The cause of action in this case, is founded in part upon supplies and necessaries furnished her before her marriage, and the rest since. For those furnished before marriage, her separate property is clearly liable,

under Sec. 13 of the statute defining the rights of husband and wife, which is as follows : " The separate property of the husband shall not be liable for the debts of the wife contracted before the marriage, but the separate property of the wife shall be and continue liable for all such debts." This liability of the separate property can only be enforced in a suit in equity, where all interested can be made parties, the separate property ascertained, and a decree rendered directly against the property for the payment of the debt. The right of action in this case, so far as relates to that portion of the demand which accrued before the marriage, against the separate property of the wife, is clear and undoubted under the statute.

As to that part of the demand which accrued since the marriage, we have examined the rules of equity which relate to such liabilities, and it is the duty of the Court, and it has the power, to adjudicate the matter in accordance with those principles ; and if the claim of the plaintiff is found to be of such a character as to entitle him to a remedy for relief against the separate property of the wife, such relief should be granted him. The fact that the wife now, after having obtained the necessaries and supplies, and appropriated them to her own use, under a promise that her separate property should be held liable therefor, refused to aid in making that property liable, can make no difference. Fraud on the part of a married woman is as odious as when perpetrated by any other person. If the plaintiff and his assignors acted in good faith, relying on her promise in furnishing the goods, they are entitled to relief against her property, although they are not entitled to a personal judgment against her. It follows that the Court erred in sustaining the demurrer to the complaint.

The judgment is reversed, and the defendant is directed to answer the complaint within ten days after service of notice of the filing of the *remittitur* in the Court below.

COPE, J. delivered the following dissenting opinion :

I am of opinion that no charge can be created upon the separate property of a married woman, except in the mode pointed out by the statute. The statute (Wood's Dig. 488) provides, that " The

Miller *v.* Newton.

husband shall have the management and control of the separate property of the wife, during the continuance of the marriage ; but no sale or other alienation of any part of such property can be made, nor any lien or incumbrance created thereon, unless by an instrument in writing, signed by the husband and wife, and acknowledged by her upon an examination separate and apart from her husband." Of what avail are these prohibitory provisions, if the wife, by simply contracting a debt to be paid out of her separate estate, can create a valid and binding charge upon that estate ?   I regard the statute as furnishing the only rule to be observed in such cases.   The Legislature may not have acted wisely in adopting it, but so long as it stands, the Courts are bound by it, and have no power to set up a rule of their own in its place.   The general equity rule, which allows a married woman to incumber her estate by a mere verbal agreement, is certainly in conflict with the statutory rule, which requires a writing.   The object of the statute was to protect the wife, not only as against the husband, but as against her own improvident acts, and persons dealing with her must see that the forms necessary to give validity to her contracts are complied with.   The statute is as obligatory in equity as at law, and the fact that in some cases its operation may be attended with hardship, is no reason for disregarding it.   It is universally agreed that the rule in equity is founded upon the *jus disponendi* of the wife, and where the estate comes to her hands with conditions attached as to the manner of its alienation, equity will not interfere unless the conditions have been performed.   In this case the estate was held by the wife, subject to the conditions imposed by the statute, and as these conditions were not complied with, I see no way in which the estate can be reached.   The question is an important one, and as I differ with my associates upon it, I have felt it my duty to state the grounds of my opinion.