Maclay *v*. Love *et al.*

---

## CHARLES MACLAY *v*. HARRY LOVE AND MARY LOVE.

SEPARATE PROPERTY OF MARRIED WOMEN.—The rights of married women, as to their separate property and their power over it in California, do not depend alone on the principles of the common law, or upon the doctrines of Courts of equity, but mainly upon the Constitution and statutes of the State.

PERSONAL LIABILITY OF MARRIED WOMEN.—Except in special cases, as under the Sole Trader's Act, a married woman cannot, by contract, create a personal liability against herself in any form.

MARRIED WOMEN'S SEPARATE ESTATE.—Under the laws of California a married woman, by the mere execution of a promissory note in the ordinary form in consideration of services rendered, or moneys furnished for her benefit or the benefit of her separate estate, or by the purchase of goods in the ordinary mode for her separate use, with the intent and understanding that the demand thus arising shall be satisfied out of her separate estate, cannot create a charge or incumbrance upon such separate estate; nor can a Court of equity impose and enforce such claim or demand as a charge or incumbrance upon such separate estate.

SAME.—A Court of equity in this State has no power to enforce any claim or demand as a charge or incumbrance on the separate estate of a married woman, unless such claim or demand has become a charge, lien, or incumbrance thereon by virtue of a contract evidenced by an instrument in writing, signed and acknowledged by the wife, in accordance with the sixth section of the Act defining the rights and duties of husband and wife, passed April 17, 1850.

SEPARATE ESTATE OF MARRIED WOMEN.—A married woman in this State has no power to create any charge, or lien, or incumbrance, upon her separate estate, except by an instrument in writing, signed and acknowledged by the wife, in accordance with the sixth section of the Act defining the rights and duties of husband and wife, passed April 17, 1850.

SIXTH SECTION OF THE ACT CONCERNING HUSBAND AND WIFE.—The sixth section of the Act defining the rights and duties of husband and wife, passed April 17, 1850, is not unconstitutional. Even if that part of said section which requires the husband's signature to the instrument is unconstitutional, it can be stricken out without vitiating the remainder of the section.

CONSTRUCTION OF ACT OF APRIL 17, 1850.—The Act of April 17, 1850, defining the rights and duties of husband and wife, applies to property held as separate by women married in this State after the passage of the Act, without reference to the time when the property was acquired.

APPEAL from the District Court, Third Judicial District, Santa Clara County.

In 1845 the Mexican Government granted to the defendant, Mary Love, (then Mary Bennett,) a tract of land lying in the present County of Santa Clara. The land was confirmed to her by the United States District Court, and she afterwards married defendant, Harry Love. In 1857 both defendants executed to H. S. Washburne their note for two hundred dollars for surveying said tract of land. In 1860 plaintiff. sold defendant, Mary Love, goods of the value of twenty-seven dollars and forty cents, and about the same time the note was assigned to him. For the sum due on the note; and for the goods, the action was commenced.

The Court sustained a demurrer to the complaint, and plaintiff declining to amend, gave judgment for defendants. Plaintiff appealed.

The other facts are stated in the opinion of the Court.

C. T. Ryland, for Appellant.

Plaintiff says that property acquired previous to the Act of April 17, 1850, (Wood's Dig. 487,) is not affected by it.

The Mexican law prevailing in California, at and before its cession to the United States, declared this the separate estate and property of Mrs. Mary Love, and the quality of her estate was such that she might, by her own act, alienate it without the necessity of procuring the signature of her husband, or without being compelled any more than a *feme sole*, or a man, to procure the consent of others to a deed or contract concerning her property; but the husband's bare assent, or his previous license, or his subsequent express or implied ratification, or rather his mere failure to make objection, would be sufficient; and his subsequent ratification would make her sale, or lien, or contract, definitely valid, etc.

The case of *Harvey* v. *Hill*, 7 Texas, 595, is illustrative of this view, and was an action of ejectment. The instrument of conveyance (which was a conveyance of the wife's separate estate) under which the defendant derived title was made in the year 1837, and was governed by the Mexican law, and not by the statute of Texas. (See opinion in that case.)

In *Ingoldsby* v. *Juan*, it is said that the wife could, before the statute, dispose of her property with the bare assent of her husband as she chose, by any informal instrument, or possibly without writing. (12 Cal. 575.)

The husband could ratify what the wife had done. In the case at bar both husband and wife sign the note for the work done on her separate premises. (Law of Toro, 58; Novissima Recopilacion, p. 4, book 10; Title Law 14, vol. 5; 8 Texas, 397; 10 Texas, 123, 286; 21 Barb. S. C. 286.)

The above authorities show that a married woman could dispose of her property, and could bind it for her debts.

It is not disputed that a married woman's separate estate would be bound for debts contracted on the faith of it, or for the betterment or enhancement of such separate property. (8 Texas, 397; 10 Texas, 123; 5 Texas, 195, 152; 21 Barb. S. C. 286; 3 John. Ch. 77; 17 John. 548; 6 Wend. 13; 4 Coms. 9.)

The estate and right of Mrs. Love, formerly Mrs. Bennett, was the same under the Act of 1850 as under the Spanish law, and right of alienation was not restricted by that statute. If her right of alienation was not restricted, her contracts for the benefit of her separate property must be valid. (*Edrington* v. *Mayfield*, 5 Texas, 365. See authorities last above cited.)

Such as her estate was, such as her rights were, and such as her power of disposition was, became unalterably fixed by the sixteenth section of Article first of the Constitution of California. No bill of attainder, *ex post facto* law, or law impairing the obligation of a contract, shall be passed.

Her right was secured by that clause in the Constitution, " because property consists as well in the *jus disponendi* as in

the *jus proprietatis,* for of what real value is the latter if the former may be practically defeated." (7 Iredell's Equity R.)

By the fourteenth section, eleventh Article, and the eighth section, first Article, of the Constitution of California:

Property consists in the right to enjoy and dispose of certain things, etc. (Bouv. Law Dictionary, Vol. II, Title—Property; Jacob's Law Dictionary, Title—Property.) Property means the highest right a man can have for anything—being used for that right which one hath to lands or tenements, goods or chattels, which no way depend on another man's courtesy.

It is a rule of common law that the power of alienation is an inseparable incident to the right of property. (10 Barb. 597.)

If the position of the defendants be sustained this right is impaired. The "*jus disponendi*" is virtually taken away, making her power of disposition depend upon the arbitrary will of another, and even the obtaining the assent of that other in a particular way and before a particular officer. Indeed, it is. made subject not only to the arbitrary will of her husband, but upon the writing of a particular certificate of acknowledgment by a certain officer, for it is decided that the certificate of acknowledgment by a Notary Public, etc., to a conveyance made by a married woman of her separate property, is 'and must be a part of the conveyance itself.

This is in fact giving the property to the husband and clogging it not only with his will but with acts of others ; because we have seen that the right to dispose of property is a part of the *jus proprietatis,* and by the Act of eighteen hundred and fifty, the husband is made the owner that far of his wife's separate property, and the wife is rendered powerless in relation to her separate property—just as powerless as she is over the separate property of her husband. In the case at bar, Mrs. Love owned the real estate in her own right, with the power of using and disposing of the same before the Act of eighteen hundred and fifty. After that Act, according to the theory of the defendants, she could not protect it without the

assent of her husband. She could not dispose of it without his assent in writing first had, and without some Notary would write a proper certificate of her and . her husband's acknowledgment. This makes the wife's disposition of her separate property depend upon the will of one who is not the owner.

The effect of the statute, if made to apply to property acquired before the making of the Constitution, and before the making of the Act of April seventeenth, eighteen hundred and fifty, is unconstitutional because it impairs the obligation of contracts. (*Ingoldsby* v. *Juan*, 12 Cal. 576.)

Appellant contends that the Act of eighteen hundred and fifty does not apply to the past but to the future, and 'that it does not affect the position of property acquired before its passage.

The Legislature had no power to affect or change marital rights or regulations fixed by law previously, and if they had, the Court will not presume, in the absence of an express declaration to that effect, that they so intended. (*Ingoldsby* v. *Juan*, 12 Cal. 580.)

No retrospective operation was intended, or perhaps could have been given to such an Act. (*Ingoldsby* v. *Juan*, 12 Cal. 580 ; *Morrison* v. *Wilson*, 13 Cal. 497.)

For the rule of interpretation of statutes see *Grimes* v. *Norris*, 6 Cal. 622, and brief of Judge Baldwin in that case.

The Act of eighteen hundred and fifty positively shows the intention of the lawmakers was to exclude estates and rights already vested.

See sections fourteen and fifteen, Wood's Digest, page 489. " *Expressio unius est exclusio alterius.*"

A legislative enactment must be express to convince the Court that it is to have any other than a prospective operation. (*Diwart* v. *Purdy*, 29 Penn. 113 ; U. S. Digest, Anno 1858, p. 681, Sec. 5 ; *Sanders* v. *Carrol*, 12 La. 793 ; U. S. Digest, Anno 1858, p. 681, Sec. 7.)

If the Act of eighteen hundred and fifty gives the control and management of the separate property of wife to the husband and requires his mind to act before she can make any

disposition of it, it is clearly an *abridgment* of her *rights*, and unconstitutional. (*George* v. *Ransom*, 15 Cal. 322.)

The term "separate property" in the fourteenth section, eleventh Article, of the Constitution, is used in its common law sense, and by that law "separate property" means an estate held both *in its use* and in its title, for the exclusive benefit of the wife. Hence, a law taking away the right of the wife to dispose of her property must be unconstitutional, particularly as to property the rights to which were absolutely hers before the passage of the Act of April seventeenth, eighteen hundred and fifty. (12 Cal. 322.)

If the Legislature can deprive a married woman of the disposition of her separate property, a right which she had under Mexican or Spanish law, why cannot they deprive her of its use or its profits?

To deprive a *feme covert* of the right to dispose of her property, or to transfer that right to another—for example, her husband—is obnoxious to the eighth section of Article first of the Constitution, which says, among other things, that no persons *    *    * shall be deprived of life, liberty, or *property*, without due process of law, etc. (*Westervelt Exec.* v. *Gregg*, 2 Kernan, 202.)

*T. H. Laine,* for Respondents.

It appears from appellant's bill that the separate estate of the wife sought to be charged with the payment of this account for goods, wares, etc., consists in real estate—land. Now, upon the most liberal construction of the doctrine of appointment, the property sought to be charged being real estate, there must be some allegation in the bill showing a clear intention to charge that estate, and that intent must be evidenced by some written agreement or instrument, and not a verbal contract, as this most clearly is. The execution of a note, or the indorsement of a bill of exchange, has been regarded as manifesting an intention by a *feme covert* owning a separate estate to charge that estate; but the doctrine of appointment has never been held to go so far to make verbal contracts an evidence of such

intention. In the case of *Burch and Wife* v. *Breckinridge, etc.,* reported in 16 B. Monroe, Kentucky Reports, pages 482 to 492, holds the doctrine here contended for. On page 487, the Court in that case say :

" The extent to which her separate property (speaking of a married woman) may be subjected to the demands of creditors claiming under parol agreements, has not been determined by this Court. So far as the separate property consists of land, it cannot be made liable by a verbal contract. The wife cannot alien or dispose of her real estate except by a written agreement, and as a charge upon it for the payment of debts operates as a disposition of it *pro tanto*, it can only be created by a contract in writing." (See the opinion and authorities therein cited.)

This we take to be the correct doctrine, and it fully sustains the position we have taken upon the case at bar. If the appellant's position be true, there can be no protection thrown around the separate estate of a *feme covert*, the husband and his creditors may easily evade the whole law as regards the alienation of the wife's separate estate; the Courts, however, cannot lend themselves to the perpetration of such frauds upon married women.

By the Court SAWYER, J.

Plaintiff seeks to charge the separate property of Mary Love, the wife of defendant, Harry Love, with the payment of a note executed by both defendants, for services alleged to have been rendered for the benefit of the separate estate of the wife, and at her request, with an alleged intent on the part of the wife to make the same a charge upon her separate estate. Also, for goods sold and delivered during coverture to the wife for her own use, and at her request, with a like alleged intent.

Section six of the Act of April 17, 1850, " defining the rights and duties of husband and wife," provides, with respect to the separate property of the wife, that, " no sale or other alienation of any part of such property can be made, nor any

lien or incumbrance created thereon, unless by an instrument in writing, signed by the husband and wife, and acknowledged by her upon examination separate and apart from her husband," etc.    (Wood's Digest, 488.)

It was repeatedly held by our predecessors, that no title to the separate property of the wife, either real or personal, could be conveyed, except by an instrument in writing, executed and acknowledged by her in the mode prescribed by this Act. (*Selover* v. *Am. Rus. Co.*, 7 Cal. 266 ; *Barrett* v. *Tewksbury*, 9 Cal. 13 ; 13 Cal. 501 ; and other cases.)    The statute is as emphatic in its provisions against creating "any lien or incumbrance thereon " as against conveyances.    The rights of married women as to their separate property, and their power over it in California, do not depend alone upon the principles of the common law, or upon the doctrines of Courts of equity ; but mainly upon the Constitution and statutes of this State.    It is not pretended that the defendant, Mary Love, is personally liable upon the contracts sued on ; but it is insisted that being the owner of separate property, as a necessary incident to such ownership, and to the *jus disponendi*, she has a right by contracts not imposing liabilities against her personally, to create a charge upon such property, which the Courts will enforce. Admit this to be so, yet such charge must be created in some mode not prohibited by statute.

If a demand can be enforced as a charge against the separate property of the wife, it must in some form ultimately become a lien upon it, and result in a sale and conveyance of the property.    The lien or incumbrance must originate in some action on the part of the wife, to be perfected and enforced by the Courts by means of a sale.    But the statute says that no sale or other alienation shall be made, nor any lien or incumbrance created thereon, except in a certain prescribed form.    It is prohibitory in its terms.    Aside from exceptional cases—as under the Act relating to sole traders— the wife has no power by contract to create a personal liability against herself in any form.    If she can create a charge upon her separate property, to be satisfied out of the separate

property *alone,* independent of any personal liability, the charge must be to that extent a disposition or alienation of, or an incumbrance upon such separate property. That she has the power to create such a charge there is no doubt, but she has no power to create it in any other mode than the one prescribed by the express provisions of the statute. And in this consists the difference between the case under consideration, and those found in the Chancery reports of England and the older States. In the latter cases, there was no statutory limitations as to the mode of contracting, while here there is. The wife, under our statute, can create no right against her separate property except in the mode prescribed. The prohibitory provisions of the Act would be of little avail if the wife, by simply contracting a debt to be paid out of her separate estate, could create a valid and binding charge upon it. But she has no such power, and an attempt to create a charge by her contract in the form alleged would be simply void. Nor can a Court of law or equity, in the face of the statute, create a right where none exists independent of its action. The office of a Court is limited to the enforcement of rights already existing by applying the appropriate remedy. The statute prescribes the only mode by which debts can be created, and made a charge, or incumbrance upon the separate estate of a married woman ; and they must become a charge before a Court of equity, in the language of Lord Cottenham, can "take upon itself to give effect to them, not as personal liabilities, but by laying hold of the separate property as the only means by which they can be satisfied."

A claim for which no person is individually liable, and which cannot by the simple act of any person be charged as an incumbrance upon property, is simply a nullity, and cannot serve as the foundation of a right upon which a Court can build a superstructure for divesting a married woman of the ownership of her separate property.

In the case of *Miller* v. *Newton,* 23 Cal. 554, a majority of the Justices—Mr. Chief Justice Cope dissenting—took a differ-

ent view of the question, holding that the provisions of the statute under discussion had no application to cases of this kind.

The prevailing opinion says: "The respondent refers to the cases of *Selover* v. *The American Russian Com. Co.*, 7 Cal. 266, *Barrett* v. *Tewksbury*, 9 Cal. 13, and other decisions of this Court, founded upon the statute relating to conveyances of property by a married woman. Those cases relate to the power of a married woman to execute instruments conveying or incumbering her separate property, and the mode in which such conveyance or incumbrance must be executed and acknowledged to be binding upon her, and they therefore differ entirely from the case now before us, in which no such question is directly involved. The statutes upon this subject, and upon which these decisions were founded, do not in any way abrogate or impair the powers of a Court of equity over the rights and property of married women, or the long established rules of those Courts upon this subject upon which this case depends. While these statutes confer upon married women a power to dispose of their property which they did not before possess, yet there is no expression of any legislative intention to thereby divest Courts of equity of their long established powers and jurisdiction. To effect such an object would require a clear expression of legislative will. These statutes are a substitute for the ancient common law proceeding by fine and recovery, which was the only mode by which, at common law, a married woman could convey her real estate."

With due deference to the learned Justice who delivered the opinion, we are unable to perceive any principle upon which the class of cases he was considering, so far as he refers to that part of the demand accruing during coverture, can be distinguished from the cases cited.

The terms of the statute are very broad. It uses among others the precise term "*incumbrance*," which the learned Judge in this very opinion (unconsciously, perhaps, but naturally enough) employs to characterize demands charged upon separate estates. The opinion says: "In accordance

with this principle, her separate estate will in equity be held liable for all the debts, charges, *incumbrances* and other engagements which she expressly or by implication charges thereon."

So also in the passage from the decision of Lord Chancellor Brougham in *Murray* v. *Barlee,* cited in the prevailing opinion, it is said : " In all these cases I take the foundation of the doctrine to be this : the wife has a separate estate, subject to her own control and exempt from all other interference or authority. If she cannot affect it no one can, and the very object of the settlement which vests it in her exclusively is to enable her to deal with it as if she were discovert. The power to affect it being unquestionable, the only doubt that can arise is whether or not she has *validly incumbered it.*"

So appropriate is the word " incumbrance," or " incumbered," to express the idea of a charge upon property without any personal liability against the owner, that Judges naturally, and almost necessarily, hit upon that very term to convey the idea in discussing the question. The last clause of the passage just cited is especially applicable to the case in hand. "The power to affect it (the separate property) being unquestionable," the only question "that can arise is, whether she (in this instance Mary Love) has *validly incumbered* it." The statute says that *no incumbrance* can be created thereon unless by an instrument in writing executed and acknowledged in a certain way, and the method designated was not pursued. There never was a time when a Court of equity was authorized to enforce an incumbrance, until an incumbrance existed. And now, as before, a right must be created before the Courts can be called upon to apply a remedy. It is not claimed, as seems to be supposed, that the statutes under consideration in any respect abrogate or impair the powers of the Court to afford a proper remedy where the right exists. The Act containing the prohibitory clause relates to the *powers of the wife, not of the Courts,* and the statute was not intended to relate to conveyances merely, as seems to be intimated. Its purpose

48

was not to provide a substitute for fine and recovery and enable the wife to convey her property.

This Act was passed on the 17th of April, 1850. On the day before—the 16th—the Legislature had passed "An Act concerning conveyances," which was a substitute for the mode of conveyance under the Mexican law, and not in any sense, as applied to California, for conveyance by fine and recovery, a mode of conveyance never in use in this State. That Act was a general Act relating to conveyances, and it made full provisions for the *conveyance* of the property of married women, as well as of other parties. There was no necessity for any other provision on that head. The object and scope of the Act under consideration was entirely different from that of the "Act concerning conveyances." Its object, as its title briefly indicates, and an examination of its various provisions will demonstrate, was, to "define the rights and duties of husband and wife," and particularly to prescribe the powers of both husband and wife with reference to their property, separate and common. And it is this Act relating to the precise subject matter under consideration, and not the Act concerning conveyances, that contains the prohibitory clause. The minds of the legislators were particularly directed to the question. The whole object of the statute was to define the rights pertaining to the marriage relation, and particularly the rights and powers of the wife with respect to her separate property; and these rights were placed upon a basis entirely different from that which prevails under the common law. This Act did not, in our view, "confer upon married women a power to dispose of their property which they did not before possess," as also seems to be supposed in the prevailing opinion in *Miller* v. *Newton*, but it was a limitation of a power which already existed to a particular mode of conveyance and charging or incumbering their separate estates; and in the language of Mr. Chief Justice Cope, "the object of the statute (in thus limiting the power to the mode) was to protect the wife, not only as against her husband, but as against her own improvident acts, and persons dealing with her must see that

the forms necessary to give validity to their contracts are complied with."

It is not to be supposed that the legislators, with their minds especially directed to the subject and having these objects in view, used the comprehensive terms in the prohibitory clause of the statute in the restricted sense supposed in the prevailing opinion in *Miller* v. *Newton*—a sense that would defeat the only purpose and render nugatory that important provision of the Act. We think the case within the purview of the prohibition.

The prevailing opinion in *Miller* v. *Newton* appears to us to concede too much to the powers of Courts of equity, and too little to the statutory modifications of the power of the wife.

It was a well settled doctrine in England, and the older ·States, that a married woman in equity could deal with her separate estate as though she were a *feme sole.* Originally, it is true, the establishment of separate estates in a married woman was an innovation upon the principles of the common law created by Courts of equity. These estates originated in trusts for the separate use of married women. When Courts of equity sustained the validity of these trusts and recognized the wife's estate under them, it seemed to be the necessary result that she should have the power of disposition, and the power was accordingly conceded. (*Yale* v. *Dederer*, 18 N. Y. 269, and 22 N. Y. 451, where the subject is fully and ably discussed.)

" The right to charge her separate. estate in equity resulted from the *jus disponendi* which Courts of equity regarded her as having, and it was a necessary incident of the full enjoyment of her property." (18 N. Y. Rep. 272.) The *power* of the wife to dispose of her separate estate is very generally made the basis of its liability to be charged with the debts incurred for her benefit, by the English Chancellors, even including Lord Cottenham, (who comes the nearest to repudiating the doctrine,) though hardly any two of them agree in their reasoning by which the liability is worked out or deduced from the *jus disponendi*, as will be seen from an examination

of the elaborate review of the cases in *Yale* v. *Dederer*, 22 N. Y. Rep. 451.. Mr. Justice Selden, in concluding his comments on the cases, and particularly referring to the reasoning of Lord Cottenham, says (page 459) : " The truth would seem to be that this mode of dealing with the estates of married women, to the extent to which it has been carried by the English Courts, could not be sustained by any process of legal reasoning, and hence the grounds upon which it was made to rest have been repeatedly changed, and the rule itself has been fluctuating and uncertain." * * " The views of Lord Cottenham are no more likely to be permanent than those of his predecessors. Some future Lord Chancellor may detect the fallacy of his reasoning, as he detected that of Lord Brougham. No rule can ever be stable the reasons for which are constantly changing. If we desire precision and certainty in this branch of the law, we must recur to the foundation of the power of a *feme covert* to charge her separate estate ; and this has heretofore arisen solely from her incidental power to dispose of that estate."

" Starting with this point, it is plain that no debt can be a charge which is not connected by agreement, either express or implied, with the estate. If contracted for the direct benefit of the estate itself, it would of course become a lien, upon a well founded presumption that the parties so intended, and in analogy to the doctrine of equitable mortgages for purchase money. But no other kind of debt can, as it seems to me, be thus charged without some affirmative act of the wife evincing that intention."

But these remarks refer to countries where there is no express limitation upon the power or mode of making the contract with reference to incumbering the estate, as under the equity system of England, and under the statute of New York, which, unlike ours, contained no restriction in this particular.

Thus, it will be seen, that, though separate estates and their incidents were originally the creations of Courts of equity, established, perhaps, by a usurpation of powers, yet the liability of the separate estate is based upon the recognized own-

ership of the property; a power of disposition as an incident to the ownership; and a contract actually made by the owner, by which a charge upon the estate is created, thereby making to the extent of the charge an inchoate disposition of the property. A right is thus created, for the enforcement of which—a Court of law being inadequate—a Court of equity affords the remedy.

But in our State, the rights of the parties are fixed by statute, and the only duty or power of the Court is to enforce those rights in accordance with the spirit of the statute, as plainly indicated by the letter. Had we never been educated under the double system of common and equity law, as they prevail in England and the older States, we should have little difficulty with the statute before us, as we apprehend, in determining the rights of the parties in respect to the questions under consideration.

The following remarks of Mr. Justice Selden in the case last cited, (page 460,) are not inappropriate on the present occasion :

" But there is a strong additional reason why this Court should decline, at this time, to adopt the fictitious theories on this subject, which have so long prevailed in the English Courts. Married women are not hereafter to be indebted to equity merely for protection or the enjoyment of their separate estates. They hold them by a legal title, and have a legal right to dispose of them. The Acts of 1849 and 1860, [in this State the Act of 1850,] are henceforth, if not repealed, to be the source of their power over such estates. There is no longer any foundation for the argument, that as equity creates and protects these estates, equity has a right to control them. Rules, therefore, which have grown up under this idea, which I regard as to some extent illusory, will be hereafter inappropriate."

Under our statute, as we read it, the wife is endowed with a capacity to hold separate property as fully, at least, as she could under the principles recognized by Courts of equity, She also has the power to dispose of or incumber it, as she had in equity; but in this she is restricted as to the manner of

effecting the disposition or incumbrance by the prohibitory clauses of our statute, whereas in equity there was no such restriction. When a charge or incumbrance has been created in the mode recognized by law, the Courts will afford the remedy by enforcing it, as Courts of equity would have done. But until such charge or incumbrance is legally created, there is no right to enforce, and of course no remedy can be afforded; neither could there have been under the principles of a Court of equity. The whole question is narrowed to the form in which the incumbrance is to be created, and not to the power to create it.

But if the case is held to be within the prohibitory clause of the sixth section of the "Act defining the rights and duties of husband and wife," it is insisted that the provision is unconstitutional. Conceding, for the purposes of the argument, that portion of the section requiring the instrument to be signed by the husband to be unconstitutional—a question we do not now intend to decide—this will not vitiate the remainder of the section, if valid in other respects. Requiring the signature of the husband is only an additional safeguard, and it is not so vitally connected with the object and scope of the Act, that it cannot be stricken out without vitiating the whole section. It will, therefore, only be necessary to consider the constitutionality of that part of the section which prohibits the wife from alienating or incumbering her separate property in any other manner than by an instrument in writing manifesting her intention, signed by her and acknowledged in the mode prescribed. We do not think this portion contravenes any constitutional provision. It does not prohibit her from disposing of, or incumbering all, or any part of her separate estate upon such terms as to her may seem proper. It does not in the slightest degree interfere with her free will. It only prescribes the mode in which she shall manifest that will. It was undoubtedly the object of the statute to provide a mode of alienation and of incumbering her estate, uniform, simple, and conclusive, which should protect both the wife and the purchaser; one that should secure entire freedom of will and

action to the wife, and afford the least possible opportunity for subverting her interest through the medium of undue influence, threats, or fraud. It is a beneficent provision intended for her benefit, and not as an encroachment upon her rights. And we think its obvious tendency is, to throw a safeguard around, without in any degree impairing, the *jus disponendi.*

But it is further insisted, that the statute was not intended to apply to cases where the property was acquired before the passage of the Act, and for this reason the provision is inapplicable, and *Ingoldsby* v. *Juan,* 12 Cal. is cited to sustain this position. But if this case can be said to decide the question at all, it recognized the applicability of the provision " to property held as separate by women married after the passage of the Act," (page 580,) without reference to the time when it was acquired, and such seems to be the express provision of the statute. Section fourteen provides, that, " in every marriage *hereafter contracted* in this State, the rights of the husband and wife shall be governed by this Act, unless there is a marriage contract containing stipulations contrary thereto." There is no allegation that the marriage took place before the passage of the Act, or that there is a marriage contract containing stipulations in any respect contrary thereto. As the allegations of the complaint must be construed most strongly against the plaintiff, we cannot presume that any fact exists taking the case out of the operation of the statute, and none is alleged.

It follows that the facts stated do not constitute any cause of action against Mary Love, and there is a misjoinder of parties. As to the second cause of action for the goods alleged to have been sold to the wife, no cause of action is shown against the wife, for the reasons already stated—and none is pretended to be shown against the husband. No sale to him, or to his wife on his credit or account, and no promise by him, is alleged. The contract alleged is entirely upon the theory that plaintiff contracted with the wife alone, as the owner of separate property, on the basis and credit of her separate property, the debt to be charged upon that alone.

No contract with the husband is averred. No cause of action, therefore, is shown against either. This leaves the action as against the husband to rest upon the note, which is only for two hundred dollars.

We think the demurrer was properly sustained. Judgment affirmed.

Mr. Justice CURREY dissented.

Mr. Justice RHODES expressed no opinion.