ELIZA A. SPRINGER *versus* ELBRIDGE BERRY.

The statutes in force, before the Revised Statutes of 1857 took effect, authorized a married woman to lease, sell, convey and dispose of real estate held in her own right, by her separate deed, in her own name, as if she were unmarried.

She may hold an estate *in trust;* and where a portion of the estate is devised to her, and the remainder is held by her as trustee, with power to sell and convey the estate, she may maintain an action in her name alone, for a breach of contract by a purchaser in a sale thereof.

The statute of 1848, providing for her appropriate remedies " to enforce and protect her rights," is not to be construed as only intended to furnish separate remedies for the enforcement and protection of her separate rights *in the property itself.*

The general purpose of the several statutes indicates the intention of the Legislature to furnish to a married woman in her own name all the remedies which are essential to the enjoyment and use of her property in itself considered, and also such as are applicable to the enforcement of all such contracts as she is authorized by the statute to make in relation thereto.

Springer *v*. Berry.

Where a purchaser, at a sale by auction, fails to comply with the terms of the sale, and the property is afterwards re-sold for a less sum, he will be held liable to pay the difference in the two sales, together with the reasonable expenses incurred in making the second sale.

ON REPORT.

ASSUMPSIT to recover of the defendant the sum of one hundred and ten dollars as the difference in the two sales of certain real estate, in the city of Gardiner, with the expenses of the last sale. The date of the writ is November 7, 1857.

The plaintiff introduced evidence that *Joshua K. Osgood* was duly licensed as an auctioneer. He was then called as a witness, and testified that he sold the property described in the writ by auction at two different times, (giving the dates,) and immediately after such sale made a record thereof, which is signed by him. The record was read in evidence.

The deposition of *Spencer S. Harden* was read by plaintiff's counsel; from which it appears that the deponent, in the year 1857, was residing in St. Anthony, Minnesota; that he is the son of the plaintiff, who was then the wife of Moses Springer; that she authorized him by power of attorney to sell, and execute deeds to convey the property. Went to Gardiner, advertised this and other property for sale by auction on Saturday, October 10th, 1857. The estate described in the writ was sold to the defendant. On the next Monday, went to the office of an attorney to execute deeds of the property sold. While there, defendant came in, and was notified that deponent was ready to give him a deed. He replied, that "he should soon be at leisure and would fix up the business." Saw him on the next day, exhibited the deed executed, (which is annexed to the deposition;) he desired delay as he had not the money. It was proposed that the deed should be left with the attorney, that he might take it when he obtained the money, to which he assented. He made no objection to the terms of sale, which were cash, nor to deponent's authority. He said nothing of having made the purchase for any other person. A few days afterwards, he

informed deponent that he could not take the house, to pay the money down, as money was scarce and he could not get it without paying a high rate of interest, which he was unwilling to do.   Saw him several times afterwards, and finally told him the property must be sold again at his risk.

Deponent further testified, that he never employed the defendant to bid for his mother, nor did he ever authorize any one to request him to do so; and that he has no interest in the transaction and was only acting for the plaintiff.

The plaintiff then introduced the power of attorney to said deponent.

Also copy of the will of Spencer Harden, the former husband of plaintiff, which will was approved on the first Monday of October, 1844, which, so far as applicable to this case, reads as follows:—

" *Third.*—I give, bequeath and devise to my said wife, after the payment of my debts and expenses, one-third part of all the rest and residue of my estate, real, personal and mixed, to hold to her, her heirs and assigns forever.

" *Fourth.*—I give, devise and bequeath to my said wife, her heirs and assigns, the remaining two-third parts of my estate, to hold in trust for the benefit of my two sons, Spencer S. Harden and Walter S. Harden, and their legal representatives, should either of my sons decease during the continuance of said trust.   And I hereby fully authorize and empower my said trustee to give, grant, sell and convey, by deed or otherwise, at any time, all or any part of said trust property, and the same again to invest in such manner as she shall think proper. And I hereby direct my said trustee to pay over and expend, for the board, support and education of my said sons, during their minority, so much of the income or principal of said trust property as she may consider necessary.   And, when either of my said sons shall arrive at the age of twenty-one years, my said trustee shall pay over to such son his proportion annually of the income of said trust fund, and so much of the principal thereof as she in her discretion may think proper."

Upon this evidence the plaintiff rested her case.

The defendant's counsel moved for a nonsuit, on the ground of the non-joinder of Moses Springer, who is admitted to be the husband of the plaintiff; also, that the plaintiff is not solely interested; which motion was overruled.

*In defence,* it was alleged, that the defendant bid at the sale by the request of the plaintiff's husband, and for the purpose of preventing the property from being sold at a sacrifice; that Harden, who was acting for plaintiff, and was her agent and attorney, had knowledge of the circumstances under which his bids were made. Several witnesses were examined by defendant, whose testimony tended to sustain these allegations.

The case was taken from the jury by consent of the parties, and, on their agreement that the evidence should be reported for the decision of the full Court—the evidence to be considered, subject to all legal objections,—the Court to draw inferences as a jury might, and render judgment according to the rights of the parties.

*Danforth* argued the case for the plaintiff.

*Chadwick,* for the defendant, made the following points:—

1. By the common law a *feme covert* cannot maintain such an action, unless joined with her husband. The exception sought to be established in this case, by c. 61, § 3, cannot obtain, for a *feme covert* may maintain suits at law only for the preservation and protection of her property and for the wages of her personal labor. Statutes changing the provisions of common law create no rights by inference; if they do, the inference is that this action cannot be maintained. Chapter 81, § 100; c. 105, § 7; c. 133, § 13 and c. 82, § 31, of R. S. of 1857.

2. If the plaintiff had any interest in the property sold, two-thirds of that interest was as trustee of her two sons, and a *feme covert* can be neither a guardian nor a trustee. If, while *sole,* she be appointed such, her coverture determines the trust. The want of proper plaintiff in actions on contract is an exception to the merits. *Hunt* v. *Fitzgerald,*

2 Mass., 509; *Baker* v. *Jewell,* 6 Mass., 460; *Converse* v. *Symmes,* 10 Mass. 377.

3. The plaintiff fails to show any privity on her part; the only proof being the declaration of her husband to the auctioneer, who says that "Moses Springer employed me to sell the property and no one else," and there is no evidence to show that said Springer was authorized to act as agent. If there is such evidence, then proof of his declarations, while discharging his duty, is admissible. *Gooch* v. *Bryant,* 13 Maine, 386; *Haynes* v. *Rutter,* 24 Pick., 242.

4. The record of the contract and the contract itself is impeached by the testimony of the auctioneer who made it, the advertisement of the second sale, the testimony of Charles Osgood and the defendant.

5. The first sale was a fraud upon the public, practised by the plaintiff's agent. Public policy requires that sales by public auction should be fair and open, and the plaintiff does not, in this respect, come into Court with clean hands. The illegality of the whole transaction is only paralleled by its dishonesty.

6. If every thing else was right and legal, the balance of testimony shows, that the first sale was not concluded by any tender of delivery of a deed or of possession.

7. There is not sufficient evidence of title in the plaintiff; indeed, there is *no evidence* whatever that the plaintiff ever owned an inch of the land which S. S. Harden sold, M. Springer advertised, and which the auctioneer pretended to sell.

The opinion of the Court was drawn up by

MAY, J.— That the auctioneer's record, or memorandum by him signed, contains upon its face all the conditions of the sale, together with a suitable description of the premises, and a statement of the fact that the defendant was the purchaser, is not denied. It also appears, from the evidence in the case, that the plaintiff, by her authorized attorney, within a reasonable time after the sale, made and tendered to the defendant,

in pursuance of said sale, a good and sufficient deed, and was ready to deliver it upon payment of the purchase money; and that the defendant failed, though often urged, to perform his part of the contract. Upon these facts, it is conceded that the plaintiff is entitled to recover, unless some of the grounds in defence can be sustained.

The first point taken in defence is that the plaintiff is a *feme covert*, and therefore cannot maintain this action without the joinder of her husband in the suit. That this objection would be fatal at the common law is very clear; but, it is contended that, by our statutes, applicable to this case, the rule of the common law has been changed; and that a married woman may now maintain an action in her own name alone, touching her own separate rights of property.

The case shows that the plaintiff, in 1844, upon the death of her former husband, by his will, became seized in her own right, of one third of the premises to which the contract of sale relates, and of the other two thirds in trust, for his two sons then living. Said will was duly approved and set up at a Probate Court, held on the first Monday of October in that year; and, by the express terms of it, the plaintiff, as trustee, was fully authorized and empowered to give, grant, sell and convey by deed or otherwise, at any time, all or any part of said trust property, and the same again to invest in such manner as she might think proper.

By the statute of 1844, c. 117, § 2, it was provided, that "hereafter when any woman possessed of property, real or personal, shall marry, such property shall continue to her, notwithstanding her coverture, and she shall have, hold and possess the same *as her separate property*, exempt from any liability for the debts or contracts of the husband." This provision, by the statute of 1847, c. 27, § 3, was applied to all married women, whether married before or after the passage of that statute.

By the statute of 1848, c. 73, § 1, it was enacted that "any married woman who is seized and possessed of property, real or personal, as provided for in the Act to which this is

additional, *shall be entitled to the appropriate remedies, as authorized by law in other cases to enforce and protect her rights thereto;* and she may commence, prosecute or defend any suit in law or equity to final judgment and execution *in her own name,* in the same manner as if she were unmarried, or she may prosecute or defend such suit jointly with her husband."

By the statute of 1852, c. 227, § 1, " any married woman seized and possessed of property, real or personal, as provided in the Acts to which this is additional, shall have power to lease, sell, convey and dispose of the same, and to execute all papers necessary thereto, in her own name as if she were unmarried," &c. The statute of 1855, c. 120, § 1, is very similar to the one last cited, authorizing any married woman seized and possessed, in her own right, of any such real estate within this State, or of any personal property, to lease, sell, convey and dispose of the same, or any part thereof, *by her separate deed in her own name* as if she were unmarried.

The statutes which have been cited were all in force at the time of the alleged sale of the premises to the defendant, and when this suit was brought. Their general purpose is not only "to secure to married women their rights in property," as it is expressed in the title of the first statute passed upon this subject in 1844, above cited, but also to provide the modes and remedies necessary for the accomplishment of that end, without the aid, and against the interference of the husband. To accomplish this, they not only have deprived the husband of such rights to the wife's property, as vested in him by virtue of his marriage at common law, but the wife is to hold it free from all claim or control over it on his part. *Southard* v. *Plummer & al.,* 36 Maine, 64. So far as regards all property upon which these statutes operate, the wife is invested with a legal capacity to make all contracts for its conveyance, and to execute all necessary papers for that purpose, in the same manner as if she was sole and unmarried. Such property throughout all these statutes is treated as her separate property.

There seems also to be good reasons why she should be

entitled to all appropriate remedies in her own name for the preservation and protection of her estate, and also for the enforcement of such contracts as she is authorized to make for the management or sale thereof. Without these, her separate power of leasing or selling the estate may be rendered almost ineffectual. The husband by refusing to join with her in suits upon such contracts may deprive her of all remedy. He may thus greatly embarrass, if not prevent her power of alienation or of leasing her estates. Difficulties, thus thrown in the way of the enforcement of her contracts, would leave her without the power to compel a performance, or even to recover any damages for a breach. The statute of 1848, before cited, we think, was designed to furnish separate remedies commensurate with her separate rights, so far as such rights exist by force of the statute,

The statute of 1848 expressly provides for her all appropriate remedies " to enforce and protect her rights" to the property which is secured to her by the Act to which this statute is additional, and then proceeds to enact that she may commence, prosecute or defend *any* suit in law or equity in her own name. If, as is contended, the literal construction of this statute is only to furnish separate remedies for the enforcement and protection of her separate rights in the property itself, still such a construction, we think, is too narrow to meet the evident design of the statute. Its language being susceptible of a broader construction, we cannot doubt, when we look at the general purpose of all these statutes, that the Legislative intention was to furnish to a married woman, in her own name, not only all the remedies which are essential to the enjoyment and use of the property in itself considered, but also such as are applicable to the enforcement of all such contracts as she is authorized by these statutes to make in relation thereto. The word " rights," as used in the statute, seems to include something more than the mere right of property. It embraces such rights as spring out of its lawful management, or as are incident to its ownership and the power of disposition. This action falling within this principle may

be maintained, and the non-joinder of the plaintiff's husband is no defence.

Whether our present Revised Statute, c. 61, § 3, is susceptible of, or requires a different construction, it is not now necessary to determine, because, by the general repealing Act, at the close of the volume, § 2, all the then existing statutes are still in force "for the preservation of all rights and *their remedies* existing by virtue of them." We do not mean, however, to intimate that the statute should receive a different construction.

The objection that this action cannot be maintained, because the plaintiff had not the sole interest in the premises, is not sustained. The entire legal estate was in her, and she had the sole power of disposition under the will of her former husband.

The next ground of defence is that the contract of sale was not binding when made, because the rights and duties of the plaintiff, as trustee, had ceased by reason of her coverture with her present husband. It is contended that a married woman cannot be a trustee. No authorities are cited to sustain this position, and we are not aware that such is the law. On the contrary, it has been held that a married woman may transfer a trust estate by lease or release as a *feme sole*. She also may be authorized to act as the agent or attorney of another. 2 Kent's Com. 3d ed., vol. 2, p. 150; *Barnaby* v. *Griffin*, 3 Veasy, 266. No reason is perceived why a mother may not continue to be a trustee for her children, notwithstanding she may have married a second husband after her appointment. She has been so regarded in this State, and has been held entitled to recover the possession of the trust property after a second marriage. *Cole & wife* v. *Littlefield*, 35 Maine, 439. And, since the passage of the statutes "to secure to married women their rights in property," the reasons for her being such have not been diminished.

Again, it is said that the auctioneer was not authorized by the plaintiff to sell the premises. That he was employed to do so by the plaintiff's husband, and such employment sub-

Springer *v.* Berry.

sequently ratified by her agent, if it was not previously directed, fully appears.

It is further objected, that the first sale was a fraud upon the public on the part of the plaintiff's agent. If it were so, the defendant was a party to the fraud, and the only evidence to sustain it comes from him. But if the facts and circumstances testified to by him constitute such a fraud as to vitiate the sale, these, and each and all of them are absolutely denied by one witness, the plaintiff's agent, under oath. Under these circumstances we cannot say the fraud is proved. No suggestion of any such defence appears to have been made until after the commencement of this suit. Up to that time the only objection on the part of the defendant to the performance of his contract, so far as the evidence discloses, was his inability to get the money to do so.

The other objections suggested in defence do not appear to be sustained by the proof. The result is, that the plaintiff is entitled to recover, and the measure of damages should be the difference between the sum for which the property was struck off to him, defendant, and the amount which it brought at the subsequent sale, including the reasonable expenses incurred in making such sale. Such a rule seems to be sustained by the authorities cited for the plaintiff, and is in harmony with the dictates of reason. *Defendant defaulted.*

TENNEY, C. J., and RICE, APPLETON, CUTTING, and GOODENOW, JJ., concurred.