Manchester *v.* Sahler.

[Albany General Term, March 5, 1866. *Miller, Ingalls* and *Hogeboom,* Justices.]

---

SALLY MANCHESTER *vs.* HANNAH G. SAHLER.

The statutes " for the more effectual protection of the rights of married wo-
men," (*Laws of* 1848, *ch.* 200 ; *Id.* 1849, *ch.* 375,) were not intended to confer
any greater authority upon femes covert, to enter into contracts generally,
than previously existed, and did not remove their legal incapacity to con-
tract debts.

Those statutes do not authorize a married woman to charge her separate estate
for a debt which did not arise in connection with it, and which is not for her
own benefit or the benefit of the estate.

The provisions of chapter 90, Laws of 1860, page 157, were not intended to
remove the common law disability of married women to bind themselves by
their contracts at large.

With the exception of carrying on a trade or business on their own account,
the only contracts which the act of 1860 empowers married women to make,
are those which have a direct reference to their separate property.

A married woman can not bind herself, or create a charge upon her separate
estate, by a promise to pay for nursing and taking care of her sick and
infirm father ; where she does not agree, or indicate an intention, to bind her
separate property.

Nor is she liable, in such a case, on the ground that under the statute, (1 *R. S.* 614, § 1,) she is bound to maintain her father, where it appears that she did not assume to pay for that reason and upon that consideration, and did not agree to bind her separate estate.

THE plaintiff, by her complaint, demanded a personal "judgment against the said defendant, for one hundred and fifty dollars, besides the costs of the action," and alleged that the defendant was a *married woman,* having separate property. The cause for which, in the complaint, the plaintiff demanded this judgment, was, that the defendant *employed* the above named plaintiff as a nurse, to take care of the father of the said defendant, Solomon Krum, who was at that time on the jail limits in Kingston, in the county of Ulster, and was infirm and very ill, and *agreed* to pay the plaintiff therefor. That such work was done between the 15th of January, 1861, and July 1, 1861. The *summons* in the cause, which accompanied the complaint, was in the ordinary form of a summons in an action on a contract, by which the defendant was notified that if she neglected to answer the complaint, &c. the plaintiff would take judgment against her for one hundred and fifty dollars, with interest from the 10th day of July, 1861, besides costs. The answer denied each and every allegation in the complaint, except the fact that she was a married woman, and alleged that the deceased, Solomon I. Krum, himself paid the plaintiff in full for her alleged services, by transferring to her the property mentioned in the answer. The cause was tried at the Greene circuit, on the 22d day of February, 1865, before Justice HOGEBOOM and a jury. On the trial of the cause, the plaintiff testified to Solomon I. Krum's boarding at the Ulster County House, in Kingston, &c. and said: "I took care of him till he died, day and night. The defendant was his daughter. She came there quite often to see him, and provided for him. She told me she wanted me to take care of him, her father, and *she* would see me well paid. I went on and took care of him until he died, after this *promise.* She

came there about once a week. She said her health was poor, and it was impossible for her to take care of him, and she said she would see me well paid for my services. She said she always paid her own bills; she said her father gave her $8000; she said she had her own property, and would pay me; she said this often." Two other witnesses were examined on the part of the plaintiff, to prove the promise, and the value of the services, and then the cause was rested. The counsel for the defendant then moved to nonsuit the plaintiff on the following grounds, to wit:

"1st. That the plaintiff's complaint in the action did not contain facts sufficient to constitute a cause of action.

2d. That the action could not be maintained against the defendant, she being a married woman, and that she could not be made liable in the form of action on a contract.

3d. The plaintiff has failed to show that the defendant contracted to charge her separate property, or if she did, what property she intended to charge."

The judge granted the motion, and the counsel for the plaintiff duly excepted.

The court ordered a stay of proceedings, and that the case should be heard in the first instance at the general term.

*T. R. Westbrook*, for the plaintiff.

*D. K. Olney*, for the defendant.

*By the Court*, MILLER, J. I think that no error was committed in granting the motion for a nonsuit, upon the trial of this action. The statutes "for the more effectual protection of the rights of married women," (*Laws of* 1848, *ch.* 200; *Laws of* 1849, *ch.* 375,) were not intended to confer any greater authority upon them, to enter into contracts generally, than previously existed, and did not remove their legal incapacity to contract debts. While these statutes, as incident to the power of disposition thereby conferred, authorized

a married woman to create an express charge on her separate estate, in the same manner as if she were a feme sole, they did not authorize her to charge her separate estate for a debt which did not arise in connection with it, and which was not for her own benefit or the benefit of the estate. (*Yale* v. *Dederer*, 18 *N. Y. Rep.* 265.)

The provisions of chapter 90, Laws of 1860, page 157, which were operative at the time when the services for which the plaintiff claimed to recover were performed, were not intended to remove the common law disability of married women to bind themselves by their contracts at large. To be obligatory upon them, under the statutes cited, the contract must relate entirely to their separate property, or the trade and business in which they are engaged. (*Yale* v. *Dederer*, 22 *N. Y. Rep.* 452.)

The act of 1860 enabled a married woman to carry on her trade and business, and to perform any labor or service, on her sole and separate account, but it did not extend her rights beyond the conduct of her business, so as to permit her to make contracts without regard to her trade or business, or her separate property. Selden, J. in 22 *N. Y. Rep.* 460, remarks: "That (the act of 1860) authorizes married women to carry on any trade or business upon their own account; but with this exception, the only contracts which it empowers them to make are those which have a direct reference to their separate property."

It is quite obvious that the alleged contract made by the defendant did not relate to her separate property, but was entirely independent of it, and had no connection with, or relation to, any property, real or personal, which she owned at that time; and it therefore was not valid and binding upon her.

It is urged that the defendant was liable because, under the statute of this state, (1 *R. S.* 614, § 1,) she was bound to maintain her father. I think the action is not maintainable upon any such ground. It is very questionable whether a

case is established which brings the defendant within the provisions of this statute. It may also be said that the defendant did not assume to pay for that reason and upon that consideration. But even if she had done so, she did not agree to bind her separate estate. The intention to do this must be declared in the contract which is the foundation of the charge, or the consideration must be obtained for the direct benefit of the estate. This was not done, in the present case. The defendant on no occasion agreed, or indicated an intention, to bind her separate property; and under such circumstances, she would not be liable. (*See* 22 *N. Y. Rep.* 452.)

It does not appear whether the defendant's property was real or personal, or of what it consisted. If real, under the act of 1860, which would govern the contract made, she could only contract by the written consent of her husband.

As the defendant was not liable upon the contract made, it is not essential to discuss the question whether the action was brought in a proper form.

It follows from the discussion had, that a new trial should be denied, with costs.

