KANTROWITZ and Another *v.* PRATHER and Wife.

MARRIED WOMAN.—*Separate Real Estate.—Contract.*—In this State, in order to
enforce the contract of a married woman against her separate real estate,
her intent to deal with the property must appear, and may not be assumed,
and the contract must be one from which benefit results to the property.

SAME.—*Profits of Real Estate.*—So far as the profits of a married woman's
real estate are concerned, effect will be given to her contract where she has
indicated her purpose to deal with such profits.

SAME.—*Protecting Supervision of Chancery.*—It must appear that any contract
relating to the property of a married woman, which it is sought to enforce in
equity, is conscionable, and where it relates to the betterment of her real
estate, that it is reasonably calculated to promote that end.

SAME.—*Intent.*—The fact that credit for goods sold to a married woman is
given her upon the faith of her separate property, is not sufficient to create
a charge against her land or its income; she must also herself intend to
contract with regard to her separate estate.

APPEAL from the Bartholomew Common Pleas.

RAY, J.—Suit by the appellants against the appellees. The
complaint is as follows: "The plaintiffs, Jacob Kantrowitz and
Nathan Kantrowitz, partners, trading under the firm name
and style of Kantrowitz & Co., complain of Hannah Prather,
defendant herein, and say that said defendant is now, and
has been continually for four years last past, the wife of her
co-defendant, Allen W. Prather, who is also made party
hereto; that said Hannah is now, and has been continually for
the four years last past, seized in her own right and for her
sole use and benefit, of lot No. 32, in Sims and Findley's
addition to the city of Columbus, in said county, of the
value of four thousand dollars; and that the said Hannah
is indebted to plaintiffs in the sum of $386.45, for necessary
goods, wares, and merchandise sold and delivered by said
plaintiffs, as said firm, to said defendant Hannah, at her
special instance and request, a bill of particulars of which
is filed herewith, and made part hereof. The said goods
were sold and credit given to said Hannah on the faith of
her said separate property, and not otherwise; the payment
of which said indebtedness is a charge upon the separate

Kantrowitz and Another *v.* Prather and Wife.

property of said Hannah. Said indebtedness is due and unpaid. The articles furnished by plaintiffs to defendant were articles suitable to a person in her station in life; and the credit was given to her exclusively, her husband having no property subject to execution at or during the time the articles were being furnished. Wherefore plaintiffs pray the court for a finding of the amount due from said wife to them, and a decree charging her said separate property with the payment thereof, with costs, and also a decree and order directing her said separate property to be sold to satisfy said finding and costs; or, if more consistent with equity, to order the rents thereof to be applied; and all other proper relief."

The bill of particulars filed with the complaint shows that the goods furnished the wife were mainly female wearing apparel.

The defendants demurred jointly and separately to the complaint:

1. That the court had no jurisdiction of the subject matter of the action.

2. The improper joinder of said Hannah and her said husband as defendants.

3. That the complaint did not state facts sufficient to constitute a cause of action.

The court below sustained the demurrers as to the third cause, and overruled them as to the first and second.

Final judgment on demurrer for the appellees.

The opinion of Lord ROMILLY, M. R., in the case of *Shattock* v. *Shattock*, Law R. 2, Eq. 182, states the rule in equity as to the power of a married woman to deal with reference to her separate estate, where there are no restrictions upon its alienation:—

"The principle of the courts of equity relating to this subject, in my opinion is, that, as regards her separate estate, a married woman is a *feme sole* and can act as such; but only so far as is consistent with the other principle, namely, that a married woman cannot enter into a contract. These principles are reconciled in this way. Equity attaches to the

separate estate of the married woman a quality incidental to that property, viz., a capacity of being disposed of by her; in other words, it gives her a power of dealing with that property as she may think fit; but the power of disposition is confined to that property, and the property must be the subject matter that she deals with; and, therefore, if she makes a contract, the contract is nothing unless it has reference, directly or indirectly, to that property. This is, in my opinion, the extent of the doctrine of equity relating to the separate estate of a married woman. It is on this principle that every bond, promissory note, and promise to pay, given by a married woman, has, for the reason I have already stated, been held to be a charge made by her on her separate estate; that is to say, it is a disposal of so much of her property, the whole of which, if she pleased, she might give away. But if equity goes beyond this, it appears to me that it is laying down this principle, that where a married woman has separate estate she may bind herself by contract exactly as if a *feme sole;* or, in other words, that the possession of separate property takes away the distinction between a *feme covert* and a *feme sole,* and makes them equally able to contract debts. It is clear that this implication of a charge cannot exist in the mere case of simple contract debts without one word said or written to show that the separate property is to be bound." After reviewing the case of *Johnson* v. *Gallagher,* 30 L. J. (Ch.) 298, and the case of *Hulme* v. *Tenant,* 1 Bro. C. C. 16, and alluding to the fact that on the first occasion Lord THURLOW in *Hulme* v. *Tenant* stated as the proper rule, "that a *feme covert* acting with respect to her separate property is competent to act in all respects as if she were a *feme sole,*" and that on the second occasion the reporter, Mr. Brown, was not present, but reports *ex relatione* and very shortly, and thus reporting, states Lord THURLOW as laying down the broad doctrine, "that the separate estates of married women are liable for their general engagements," though the decree rendered is not consistent with this broad doctrine; Lord ROMILLY then

proceeds, "I must, therefore, consider the case of *Hulme* v. *Tenant* as only an authority for the principle to the extent I have stated it, and that it is in this limited form only that it is confirmed by Sir WILLIAM GRANT in *Heatley* v. *Thomas,* 15 Ves. 596; that is, that the engagement need not be in writing, but if not in writing, it must be proved that it was entered into with an intention on the part of the married woman of making her separate estate· liable to discharge that debt, and this intention will not be inferred from the mere circumstance of her contracting the debt. When I say that the engagement need not be in writing, of course there is this qualification, that if the separate property of the married woman consists of real estate only, the Statute of Fraud applies as in every case affecting land; but if she have an absolute interest in personalty settled to her separate use, then a verbal agreement that her personal estate shall be liable to pay the debt will bind it."

After examining the case of *Field* v. *Sowle,* 4 Russ. 112, and the anonymous case in 18 Vesey, 258, the proper name of which is *Bruere* v. *Pemberton,* and the cases of *Gregory* v. *Lockyer,* 6 Madd. 90, and *Vaughan* v. *Vanderstegen,* 2 Drew. 165, this conclusion is reached: "The result is that, in my opinion, the rule is, that the .liability of the separate estate of a married woman is only created by something which operates as a specific charge upon it, and that this charge can be produced only by an intention on the part of the married woman to create such a charge. I adopt the expression of Sir JOHN LEACH, in *Stuart* v. *Kirkwall,* 3 Madd. 387, viz.: 'that a *feme covert* being incapable of contract, this court cannot subject her separate property to general demands. But that, as incident to the power of enjoyment of separate property, she has a power to appoint it, and that this court will consider a security executed by her as an appointment *pro tanto* of her separate estate.' The only alteration I would wish to make in this passage is, to strike out the words 'appoint' and 'appointment,' and put in 'dispose of' and 'disposal,' because it is clear, it is not an

appointment; it is not intended as an appointment in any respect. It is quite certain it is not the execution of a power, and there is a constant discussion in the cases as to what it is. It is nothing more than this, that the married woman has certain property over which she has exactly the same power of disposition as if she were a *feme sole*, and, therefore, she may dispose of that property as she pleases; she does not 'appoint' it in the proper sense of the word; 'assign' would be much nearer; but it is, in point of fact, nothing more than a disposition. She disposes of the property, and equity enforces that."

In *Matthewman's Case*, Law R. 3 Eq. 781, this decision is approved, and it is held, that the separate estate of a married woman is bound by her debts, obligations, and engagements, contracted for herself upon the credit of that estate; and whether such obligations were so contracted must be judged of by the circumstances of each particular case.

These, the most recently reported decisions of the English courts upon this question, we think correctly state the rule as there recognized, in a case where no restriction is placed upon the power of alienation.

In the leading American case of *The Methodist Episcopal Church* v. *Jaques*, 3 Johns. Ch. 77, where the English cases up to that time were fully reviewed by Chancellor Kent, he closes with this language: "I apprehend, we may conclude, (though I certainly do it with unfeigned diffidence, considering how great talents and learning, by a succession of distinguished men, have been exhausted on the subject) that the English decisions are so floating and contradictory, as to leave us the liberty of adopting the true principle of these settlements. Instead of holding that the wife is a *feme sole*, to all intents and purposes, as to her separate property, she ought only to be deemed a *feme sole, sub modo,* or to the extent of the power clearly given by the settlement. Instead of maintaining that she has an absolute power of disposition, unless specially restrained by the instrument, the

converse of the proposition would be more correct, that she has no power but what is specially given, and to be exercised only in the mode prescribed, if any such there be. Her incapacity is general; and the exception is to be taken strictly, and to be shown in every case, because it is against the general policy and immemorial doctrine of law. These very settlements are intended to protect her weakness against her husband's power, and her maintenance against his dissipation. It is a protection which this court allows her to assume, or her friends to give, and it ought not to be rendered illusory. The doctrine runs through all the cases, that the intention of the settlement is to govern, and that it must be collected from the terms of the instrument. When it says she may appoint by will, it does not mean that she may likewise appoint by deed; when it permits her to appoint by deed, it cannot mean, that giving a bond, or note, or parol promise, without reference to the property, or making a parol gift, is such an appointment. So, when it says that she is to receive from her trustee the income of her property, as it, from time to time, may grow due, it does not mean that she may, by anticipation, dispose at once of all that income. Such a latitude of construction is not only unauthorized by the terms, but it defeats the policy of the settlement, by withdrawing from the wife the protection it intended to give her. Perhaps we may say that if the instrument be silent as to the mode of exercising the power of appointment or disposition, it intended to leave it at large, to the discretion and necessities of the wife; and this is the most that can be inferred."

We have quoted fully from these well considered decisions, for the sufficient reason that upon this vexed question no inconsiderable confusion has resulted from cases having been ruled upon a misapprehension of the exact point decided or principle applied in some earlier decision. This error is avoided when the exact ruling is set out.

In the court of errors, this doctrine of Chancellor KENT:

was modified so far as this: that a married woman would be regarded in a court of equity with respect to her separate estate as a *feme sole*, and may dispose of her estate as she pleases, if there be nothing in the deed of settlement requiring the consent or concurrence of her trustee, nor any negation of an unlimited power of disposition. In the later case of *Yale* v. *Dederer*, 22 N. Y. 450, it was held, that the instrument executed by a married woman must declare her intent to charge her separate estate, or the consideration received by her must go to the direct benefit of the estate. In *Manchester* v. *Sahler*, 47 Barb. 155, it was held, that a married woman cannot charge her separate estate for a debt which did not arise in connection with it, and which is not for the benefit of her estate or for her own benefit. In *Ballin* v. *Dillaye*, 37 N. Y. 35, it was held, she might contract on the credit or for the benefit of her estate.

In *Willard* v. *Eastham*, 15 Gray, 328, the rule is thus stated: "The true limitations upon the authority of a court of equity in relation to the subject are stated with great clearness and precision in the elaborate and well reasoned opinion of the Court of Appeals in New York in the case of *Yale* v. *Dederer*. And our conclusion is, that when by the contract the debt is made expressly a charge upon the separate estate, or is expressly contracted upon its credit, or when the consideration goes to the benefit of such estate, or to enhance its value, then equity will decree that it shall be paid from such estate or its income, to the extent to which the power of disposal by the married woman may go. But where she is a mere surety, or makes the contract for the accommodation of another, without consideration received by her, the contract being void at law, equity will not enforce it against her estate, unless an express instrument makes the debt a charge upon it."

The legislation on this subject in the different states very clearly indicates that the English rule has not been entirely satisfactory. Indeed, the remark of Judge STORY, "that this holding that a general security, executed by a married

woman, purporting only to create a personal demand and not referring to her separate property, shall be intended as *prima facie* an appointment or charge upon her separate property, is a strong case of constructive implication by courts of equity, founded more upon a desire to do justice than upon any satisfactory reasoning," seems to have called forth legislative action to control and limit this chancery power. Thus in the State of Maine a married woman may sell and convey her own property—may sue or be sued in relation to her rights, and this is not confined to her separate property. *Springer* v. *Berry,* 47 Me. 330.

In Kentucky it is held, under their revised code, that a married woman cannot charge or alienate her estate but by order of a court of equity, and then only for exchange or reinvestment. *Daniel* v. *Robinson,* 18 B. Mon. 301. Her estate cannot be sold for debts by her contracted, as that would be to enable her to do indirectly what the statute prohibits her doing. In this case the husband and wife had jointly signed the note. The object of the statute was to protect married women against their own improvidence. *Williamson* v. *Williamson,* 18 B. Mon. 329. The wife cannot now by joining in a deed with her husband convey her real estate. *Ib.* 386. The same question is decided in *Stacker* v. *Whitlock,* 3 Met. Ky. 244.

In New Jersey, where the wife's property is protected against her husband and his creditors, still, as the statute does not authorize her to convey, her conveyance is void, *Naylor* v. *Field,* 5 Dutcher, 287. In *Johnson* v. *Parker,* 3 Dutcher, 239, it was held, that the land of a married woman was not liable under the mechanic's lien law, for a building erected on the land under a contract with the husband, although the wife acquiesced and gave directions in relation thereto. The statute in that State requires a deed in order to convey or incumber.

It is held in Wisconsin, that a woman may charge her separate estate where she does so clearly, leaving the question open as to what circumstances in the absence of positive

expressions would be deemed sufficient. *Heath* v. *Van Cott*, 9 Wis. 516. In *Conway* v. *Smith*, 13 Wis. 125, the majority of the court held, that under their statute the wife may give a note for materials furnished to improve her property, and that she may be sued at law—COLE, J. dissenting, claiming that the case of *Wooster* v. *Northrup*, 5 Wis. 245, was to the contrary. The statute provides, that a married woman may hold to her sole and separate use and convey and devise real and personal property and any interest and estate therein, and the rents, issues, and profits, in the same manner and with like effect as if she were unmarried. It was held in *Conway* v. *Smith*, *supra*, and in *Todd* v. *Lee*, 15 Wis. 365, that the contracts of a *feme covert*, when necessary or convenient to the proper use and enjoyment of her separate estate, are binding at law.

It was held in Michigan, under their statute of 1855, that the wife may deed her land without her husband joining. *Farr* v. *Sherman*, 11 Mich. 33; *Watson* v. *Thurber*, *Id.* 457. She need not when acting with her husband be examined separately. The husband may deed directly to the wife. *Burdeno* v. *Amperse*, 14 Mich. 91.

By the act of April 10th, 1862, the Legislature of New York provide, that any married woman possessed of real estate as her separate property, may bargain, sell, and convey such property, and enter into any contract with reference to the same, with the like effect in all respects as if she were unmarried, and she may enter usual covenants for title, which covenants, if broken, shall be obligatory to bind her separate property. Any married woman while married may sue and be sued in all matters having relation to her sole and separate property, or which may come to her by descent, devise, bequest, purchase, or the gift or grant of any person, in the same manner as if she were *sole*. She may sue for injury done to her person. She may execute any necessary bond in any action; and if the bond is broken or forfeited her estate shall be liable. No bargain or contract made by the wife shall be binding upon the husband, and

he is not liable for any costs. Judgments against a married woman may be enforced by execution against her own sole and separate property in the same manner as if she were *sole*.

Under the legislation in Alabama it is held, that a husband and wife cannot enter into a mortgage of her statutory separate estate for the purpose of subjecting it to sale for the payment of the husband's debts. *Bibb* v. *Pope*, 8 Am. Law Reg. (N. S.) 490.

In South Carolina the late English doctrine is not recognized. *Ewing* v. *Smith*, 3 Desauss. Eq. 417; *Wilson* v. *Cheshire*, 1 M'Cord Eq. 233; *Magwood* v. *Johnson*, 1 Hill Eq. 228.

In Tennessee, in *Morgan* v. *Elam*, 4 Yerg. 375, after a full examination of the cases, the court came to the conclusion, that a wife could not affect the title to the trust property except in the way and manner provided in the trust deed.

In *Lancaster* v. *Dolan*, 1 Rawle, 231, the Supreme Court of Pennsylvania regret that the English decisions recognize the right of a married woman to dispose of or encumber her separate property although the provisions in the trust deed do not specially authorize her to do so; and the court held, that the wife had no power to convey except to the extent of the power clearly given in the conveyance. In *Cochran* v. *O'Hern*, 4 W. & S. 95, it is said, "whatever uncertainty there may be in England as to the extent of the power of a *feme covert* over her separate estate, the law is well and judiciously settled in Pennsylvania, that a married woman is to be deemed to possess no power in respect to her separate estate but what is particularly given or reserved to her by the instrument creating the estate." *Thomas* v. *Folwell*, 2 Whart. 11, discards the English rule. Such, also, is the case of *Chrisman* v. *Wagoner*, 9 Penn. St. 473. In *Wallace* v. *Coston*, 9 Watts, 137, it was held, that a married woman had not charged her separate estate by an agreement to pay board

for her aunt. The statute in that State provides, "In all cases where debts may be contracted for necessaries for the support and maintenance of the family of any married woman, it shall be lawful for the creditor to institute suit against the husband and wife. He is first to have execution against the husband's estate or property, and on failure to make the money, may have execution against the separate estate of the wife." This proviso is added: "That judgment shall not be rendered for the plaintiff against the wife, unless it shall appear that the debt was contracted by the wife or incurred for articles necessary for the support of the family of the said husband and wife." It was ruled in *Murray* v. *Keyes*, 35 Penn. St. 384, that the word "or" in the proviso is to be read "and;" that beyond proof that the debt was for necessaries for the support of the wife's family, it must appear to have been contracted by the wife or in her name by her authority. This was approved in *Barto's Appeal*, 55 Penn. St. 386, where it was held a sufficient defense in a suit to charge her lands for improvements thereon, that she had not consented to the same.

In Iowa, by sections 2505 and 2506, it is declared, that the husband is not liable on contracts made by the wife in relation to her separate property, or on those which purport to bind herself only; nor is the property of the wife, or the rents or income, liable for the debts of the husband. It is also provided that the expenses of the family—the education of the children, &c., shall be chargeable upon the property of both husband and wife or either of them. Section 2508 allows "married women abandoned by their husbands to obtain authority from the District Court to act, and to transact business as though unmarried." In giving construction to these sections it was ruled, in *Jones* v. *Crosthwaite*, 17 Iowa, 393, that the purpose of the act was to protect the rights of married women in their property, but not to invest them with power to make contracts as a *feme sole*, and that their incapacity to make general personal con-

tracts, except "for the expenses of the family," &c., is not removed.

In California an act "defining the rights and duties of husband and wife," April 17th, 1850, section 6, provides with respect to the separate property of the wife, that the husband shall have the management and control during the continuance of the marriage, "but no sale or other alienation of any part of such property can be made, nor any lien or incumbrance created thereon, unless by an instrument in writing, signed by the husband and wife, and acknowledged by her upon examination separate and apart from her husband," etc. Wood's Digest, 488. Under this law it is held, in *Maclay* v. *Love,* 25 Cal. 367, overruling *Miller* v. *Newton,* 23 Cal. 554, in which COPE, C. J., had dissented, that a married woman has no power to create any charge, or lien, or incumbrance, upon her separate estate, except by an instrument in writing, signed and acknowledged by the wife as provided by law; that a court of equity has no power to enforce any claim or demand as a charge, lien, or incumbrance on the separate estate of a married woman, unless such claim or demand has become a charge, lien, or incumbrance thereon by virtue of a contract evidenced by an instrument in writing signed and acknowledged by the wife. This ruling was recognized and affirmed in *Brown* v. *Orr,* 29 Cal. 120; *Dentzel* v. *Waldie,* 30 Cal. 138; and in *Smith* v. *Greer,* 31 Cal. 476, where it was held she could not charge her separate estate by the execution of a promissory note.

In this State it is declared, that "no lands of any married woman, shall be liable for the debts of her husband; but such lands and the profits therefrom, shall be her separate property, as fully as if she was unmarried: *Provided,* That such wife shall have no power to incumber or convey such lands, except by deed, in which her husband shall join." 1 G. & H. 374, sec. 5.

It seems that by this provision a *feme covert* occupies the

Kantrowitz and Another *v.* Prather and Wife.

position in regard to her real estate which is recognized in England by the late cases—that she is as to such estate a *feme sole*, restrained only by the statute here, as by the deed of settlement in England, in her power to incumber or dispose of it. As the rule, however, is, that a *feme covert* cannot contract, and the power to do so in regard to her separate estate is the exception, it seems but the result of well established legal principles to apply the doctrine stated by Chancellor KENT and adopted by the New York, Massachusetts, New Jersey, Pennsylvania, Tennessee, and South Carolina courts, that the intent to deal with the property must appear, and is not to be assumed. And why should a court of equity enforce against the property of a married woman a contract void in law and from which no benefit results to the property? The power to incumber has been always recogized as only resulting from her incidental power to dispose of her estate, and where the transaction in which she engages has no connection with that estate and there is no purpose expressly indicated to charge the estate, we discover no ground upon which a court can declare an incumbrance of her property.

So far as the profits of her real estate are considered, she has the same power of disposition as a *feme sole;* and, therefore, where she has indicated her purpose to deal with such profits, a court will give effect to her contracts.

Our statute clearly contemplates that the real estate of a married woman shall be a source of benefit and profit to her, and when it is remembered that to render such property available at the date this act was passed in this State, a reasonable amount of expenditure upon the property was required in a large proportion of the cases within its contemplation, and that the act was intended, as the policy of courts had always leaned, for the benefit of married women, and as a protection both against improvident husbands and against their own rash contracts, a construction of the statute giving them power to deal with their real estate so as

.to secure its benefits to themselves, seems required and consistent with its spirit and language. A construction that would limit the right of the wife to deal in regard to her real estate so as to preserve her ownership, secure its enjoyment, or make it capable of yielding her an income, unless with the assent of her husband she executed a mortgage, would render her, as to that portion of her estate, entirely dependent upon the will of the very person against whose arbitrary acts the statute intended to guard her.

In the restricted interpretation given to their statute, we think the Supreme Court of California lost view of the purpose of the legislature. We regard a construction which permits the wife to deal with her lands so far as to render them a source of profit and income, or of personal enjoyment and use, and so far as to protect her title, as in best accord with the spirit of our legislation.

We do not intend to be understood as implying that the general protecting supervision which has so long been exercised by courts of equity over the property of married women, protecting them from imposition and fraud, has been withdrawn by the statute. It must therefore appear that any contract relating to the property of a married woman, which is sought to be enforced in equity, is conscionable, and where it relates to the betterment of her real estate, that it is reasonably calculated to promote that end. Within this limitation, it seems reasonable to conclude that, inasmuch as the statute makes the wife owner as a *feme sole* of the rents and profits of her real estate, and as the act is clearly intended for her benefit, a court of equity may permit her to contract with regard to her real estate so that an income may be derived therefrom.

The complaint in this case does not charge the wife with any intent to contract with regard to her separate estate. The fact that the goods were sold and credit was given by the appellants on the faith of the property, is nothing more than an averment of their opinion of what was necessary to create a charge against the land or its income. Their

intent, however, is not sufficient; the married woman must also intend thus to contract.

The demurrer was therefore properly sustained to the complaint.

Judgment affirmed, with costs.

*S. Stansifer* and *F. Winter,* for appellants.

*F. T. Hord* and *A. W. Prather,* for appellees.