B. H. THRASHER, APPELLANT, VS. DOIG & GEIGER, AP-
PELLEES.

1. A bill is not strictly a bill of discovery if it prays a discovery of facts when the discovery prayed and the allegations are not separate and distinct from the main object of the bill.

2. When a remedy in equity exists, and a remedy at law is created, the equity jurisdiction is not destroyed unless by express terms of the law.

3. Upon bill filed to charge property with debts contracted by an alleged owner for improvements thereon it is disclosed that the property is the separate estate of a married woman and her children, who are not parties to the suit, the bill should be amended by making them parties with proper allegations to establish the liability of their estate.

4. The estate of a married woman is not chargeable in equity merely by reason of a statutory lien for buildings and improvements, but because if she contracts such a debt it is implied that she means to pay it, and if she has a separate estate that is the fund out of which payment is contemplated.

Appeal from the Circuit Court for Alachua county.

The appellees filed their bill in equity against appellant, Wm. F. Carter and Wm. A. Dickenson, alleging that Thrasher, being in possession of a lot in Gainesville, contracted with Carter for the building for Thrasher of a dwelling-house upon the lot, Carter to furnish all the materials therefor. Carter applied to Doig & Geiger to get lumber to construct the building, and they, believing Carter to be irresponsible, declined to deliver the lumber until they had seen Thrasher on the matter, and Thrasher promised them that he would be responsible for the price of the lumber. On the faith of this promise they delivered a large lot of lumber, for the purpose of constructing the house, to the value of $253.33, which became due February 13, 1879. Geiger & Doig presented their bill to Thrasher, who referred them to Dickenson, who kept his

accounts, and, after some delay, it was discovered, as Thrasher and Dickenson pretend, that Carter had been over-paid, and Thrasher refused to pay the bill. Failing to obtain satisfaction Doig & Geiger filed notice of lien in the clerk's office. The records failing to show in whom the legal title of the lot was vested, it is alleged that the property was purchased by Thrasher, and that it was conveyed directly to Thrasher or Dickenson; and that Dickenson advanced the money to Thrasher to purchase the lot and erect buildings thereon. As to this it is prayed that Thrasher and Dickenson make discovery before the court as to who is the legal owner of the land, and that an order and decree be made subjecting the lot to the payment of appellees' claim, and to satisfy the lien thereof.

The answer of Thrasher and Dickenson denies that Trasher ever promised, or in any manner became liable, to pay for the lumber, and that nothing was said by Geiger & Doig about Thrasher's liability to pay for the lumber until after the lumber was delivered and most of it put into the building, and then, for the first time, Doig asked Thrasher if he could pay Carter's bill of about $250 for lumber they had delivered to Carter, the bill being made out against Carter; that Thrasher had made a contract with Carter whereby Carter agreed to build the house at a certain price. Thrasher says that the only reply he made to their application to pay the bill was that they would only get what was due to Carter after the completion of the house, Carter at that time being over-paid by some $300.

Thrasher further answers that Dickenson has no lien or security on the house for the advances made, and that the title to the lot is in him, Thrasher, as trustee for his wife and children, the land and the house having been paid for with their money and effects, and the property is entirely clear of all incumbrances.

After general replication filed testimony was taken and a decree entered adjudging that the complainants have and recover from Thrasher, *as trustee*, the sum of $253.38 ; that the same was a specific lien upon the lot and buildings and improvements thereon, and that the same be sold to satisfy that sum, with interest and costs.   The bill was dismissed as to Carter and Dickenson.

From this decree Thrasher appealed.

*Thrasher & Hampton* for Appellant.

First.  This is a cause wherein a bill in chancery was filed in Alachua county Circuit Court by Doig & Geiger, the complainants in said cause, against the defendants therein, to-wit : Wm. F. Carter, contractor, B. H. Thrasher, owner of the premises, and W. A. Dickenson, in which said bill the said complainants pray discovery of the ownership or title to the property in the said bill set forth.  The complainants also seek by said bill to enforce a mechanic's lien against said property specifically.  The defendants, Thrasher & Dickenson, in their answer to said bill, say that the title and ownership of said property is in the name of B. H. Thrasher, as trustee for his wife and children.   The discovery prayed for in the bill having been obtained by the answer of the defendants all further proceedings thereon should have ceased.   Story's Eq. Jur., Vol. 2, Sec. 1483 ; Story's Eq. Pleadings, Secs. 311, 312, 313 and 314.

Second.  A bill for discovery is properly in aid of some suit or proceeding in another court.   And where the object of discovery is to ascertain who is the proper party against whom the suit should be brought, it may be maintained before the commencement of such suit.   But when discovery is had resort should then be had to the court having jurisdiction of the subject-matter.

Third. Where the remedy at common law is sufficient a court of equity will not entertain jurisdiction. In this case, after discovery was had, the common law statutory remedy was amply sufficient. The statute of 1868, as amended in 1877, created a specific common law statutory remedy. Acts of Fla. 1877, Ch. 3042, Secs. 23 and 24.

Again, where a statute creates a specific lien in favor of mechanics, &c., and also gives them a specific remedy for the enforcement thereof, a court of equity has no jurisdiction to enforce it, unless there be some impediment or difficulty charged to exist, which would render the remedy given by the statute unavailable. 3 Kelly (Ga.) R., 137; 5 Metcalf (Mass.) R., 525.

Fourth. Furthermore, there was no occasion for a bill for discovery in this case, since the plaintiffs had their common law remedy against the specific property under the lien law of this State, even though the name of the real owner thereof is not known. Their lien was filed without such knowledge, and why could they not enforce it also?— such being a proceeding *in rem*, and not *in personam*.

Fifth. Even if the court had jurisdiction of the subject-matter it had *not* jurisdiction of the parties. The complainants' bill for discovery, after developing the fact sought thereby, to-wit: the real ownership of the said property, they did not afterwards make the said owner a party to the bill. The decree rendered in this case is against B. H. Thrasher, trustee, and yet there is no relief sought or prayed against the said Thrasher in his fiduciary capacity. Said decree is, therefore, unjust and illegal, and should be reversed and set aside.

Sixth. If the court of equity had complete jurisdiction of the cause, there is no legal liability attaching to B. H. Thrasher, as trustee for his wife and children, save for such an amount or sum as may have been due by said Thrasher,

owner, to the contractor, W. F. Carter, when the said lien of the complainants was filed in the office of the Clerk of the Circuit Court. Act of 1877, Ch. 3042, Sec. 2; 17 Fla., 162; 9 Pickering, 306.

The testimony in this case shows that at the time of the service of the written notice on the said Thrasher or on Dickenson, the said Thrasher did not owe the said W. F. Carter, contractor, *anything* at all. That on the contrary, Carter had drawn more than was due him by Thrasher.

Seventh. That W. F. Carter *was* the contractor is *not* denied. But Doig and his clerk, Voyle, say they indirectly understood from Thrasher, in conversation, that he would pay for the lumber. Thrasher swears positively that he *did not* promise to pay for lumber. There being no *positive, direct* contradiction of Thrasher's statement, it stands intact. But even if such promise was made by Thrasher to Doig or Voyle it has no legal binding effect. "The promise to answer for the debt of another must be in writing." Thomp. Dig., 217.

Eighth. James Doig is the *only* witness who swears that Thrasher promised to pay for said bill of lumber before the lien was served upon him. This statement is positively denied by B. H. Thrasher in his answer. Two witnesses, or one witness, and corroborating circumstances, are required to rebut the answer of the defendant, responsive to the allegations in the bill of complainants.

Ninth. The defendants set up in their answer that when the service of the lien of the complainants was served on Thrasher and on Dickenson, that the defendant, Thrasher, did not owe the contractor, W. F. Carter, *anything.* There is no effort or proof on the part of the complainants to disprove this statement. Nor is there any charge or proof that Thrasher owed Carter *anything* at any time after such service; though the defendants *do* prove that there was *not anything* due Carter *afterwards.*

Tenth. The decree of the court below in this case is erroneous and illegal, because the said .W. F. Carter is therein dismissed from the bill, and from the proceedings in this cause, and the entire debt is shouldered upon the defendant, B. H. Thrasher, although all materials furnished by Doig & Geiger, and sued for in this case, were brought by W. F. Carter, and the bill for same was made out against him. And the complainants recognized Carter's liability by (according to the testimony of Carter himself) repeatedly presenting the bill to him and urging him to pay it, to which Carter would reply that he could do nothing until Thrasher returned home.

We therefore think the decree of the court below is clearly erroneous and illegal, and should be reversed and set aside. .

*R. F. Taylor* for Appellees.

We take the position that Doig & Geiger's lien upon this building, which they seek to enforce by their bill in this cause, is not a " sub-contractor's " lien ; and that their right to enforce that lien should not be put off and postponed, and made to be dependent upon the fact whether anything was then due upon the price agreed by Thrasher to be paid to the contractor, Carter, for the building.

Doig and Geiger are not in any sense of the word " subcontractors ;" they would not recognize Carter the contractor, but treated directly with the supposed owner of the building, and would not let their lumber go until they had that supposed owner's promise directly to pay for it, and that, too, without any reference to the amount that was to be paid to Carter ; it was an independent contract for lumber that had nothing to do with Carter's contract at all. Can it be disputed that a man contemplating the building of a dwelling may contract directly with two or more con-

tractors and entirely independent of each other; with one of them for the building of one wing of his house; with another for the building of another wing; with a third for the doing of his masonry work; and with still a fourth one for the furnishing of certain classes of materials—lumber for instance. And may not all of these different contracts be entirely independent of each other? This is the case presented here. Thrasher contracted first with Carter for the building and for all materials; finding that Carter could not get lumber upon his own responsibility he makes an entirely new, distinct and independent contract with the complainants for their lumber. Doig and Geiger are to the fullest extent as much *original contractors* as Carter was, and the payment of their lumber-man's or material-man's lien should not be made to depend upon the fact as to whether anything was left of the amount going to Carter.

Again, the defendant, Thrasher, seeks to avoid the payment of this most equitable debt, incurred for the lumber which shields him from the storm, by setting up a contract with his contractor, Carter, and that Carter by that contract was responsible for all materials, and that he has fully paid Carter, &c. If a defendant would show matter in avoidance, after a *prima facie* case has been made out by the plaintiffs, the *onus probandi* is upon him to fully establish the avoiding circumstances. 10 Pickering, 378; 1 Met., 221; 17 Mass., 188.

Has the defendant, Thrasher, done this squarely and fairly? At the very threshold of this case he was pointed at by the finger of equity, and asked the question: Why do you not pay me for my lumber which protects you in comfort from the cold, the rain and the storm? His answer is, that I have paid your money over to some one else. And how does he support this declaration? Let the record be scrutinized from end to end, and it will be found

that he supports it by his own testimony standing solitary and alone; and that testimony does not even condescend to go into particularities; it simply says in one general sweeping sentence: " I have paid Carter all I owed him, and did not owe him anything when the notice of this lien was served on me." Under the circumstances did it not behoove him to show to these material-men an open hand and a complete record? Why, at the taking of testimony in the cause, did he not produce the books of the defendant, Dickenson, in which were kept all the payments to his contractor, Carter, so as to show from them by *dates* and *amounts* that on the day notice of this lien was served on him he had *fully paid* that contractor for building, materials and all? Instead of this, by an inspection of the record, it will be seen that nowhere does he even disturb himself to the extent of disclosing even the *amount* that he had agreed to pay and (as he claims) had paid to Carter, his contractor. Neither does Dickenson trouble himself to disclose any facts going to show the *amount* Carter was to receive, or had received. And Carter, too, keeps mum upon this point. The defendant, Thrasher, alone, in general terms, says: " I have paid him all I owed him," &c. If such was the fact, they had it in their power to show conclusively by items, *dates* and *amounts* that Carter had been paid in full on the *date* when notice of this lien was served on the defendant, Thrasher, and yet they have forborne to do so.

Another fact that appears inconsistent with the *bona fides* of this transaction. It is in proof that Doig and his clerk, Voyle, were persistent, diligent and energetic in their prompt demands, first upon Thrasher, who postponed him to Dickenson; then to Dickenson, who in turn postponed him to Thrasher; and thus he was " baffled " in the collection of his claim until wearied and disgusted he took that step which the law allowed him to protect himself from

what began to wear the aspect of trickery, and filed their lien upon the building. And yet, with all the energetic persistence and promptness of his demands, right at the laying of the cornet-stone of this building, and almost before the lumber of which it was built was laid upon the yard, he is confronted with the declaration that Carter, the contractor, has already been fully paid up for building, lumber and all; and that, too, in face of the fact that the contract with Carter stipulated that his payments were to come at intervals, dependent upon the different stages through which the building had to progress.

The appellant relies upon the decision of this honorable court in Trustees Wylly Academy vs. Sanford, et als., 17 Fla. R., p. 162, to defeat the lien sought to be enforced here. We reply that this case does not apply to the one at bar, because Doig and Geiger were not "subcontractors" under Carter. Their contract was directly with Thrasher, the owner of the building into which the lumber went, and was not dependent for its performance upon the contract with Carter. They were as much original contractors as Carter was, and had a right to establish a lien entirely independent of the contract with Carter.

Again, it is urged that the decree in this cause should be reversed because the defendant, B. H. Thrasher, discovered the title to the lot upon which the lien is claimed to be in him as trustee for his wife and children, and that they should have been made parties, &c.

Whose business was it to have them made parties? If their rights were to be invaded, it behooved them, and not the complainants, to see that they were represented in the cause.

But again, if the trustee had power to contract debts for the improvement of this trust property, which they, the ces-

*tuis que trust*, stood idly by and allowed him to do, certainly his contracts for those improvements should be binding upon that property. He being the trustee for the property, and holding the legal title thereto, and he being the one who made these contracts for its improvement, had it in his power more fully and effectually to defend that property from all suits growing out of his contracts with reference thereto than the *cestuis que trust* could possibly have done; and having thus defended, no damage has been done to the interests of the *cestuis que trust* by reason of their non-appearance as parties to the suit. If it were so necessary that they, the *cestuis que trust*, should have been made parties, why did not their trustee move to have them introduced as parties defendant? And with how much more force does this apply when it is remembered that he, the trustee, occupied towards those *cestuis que trust* the intimate relation of husband and parent?

The action being in its nature one *in rem*, and the decree being against him as trustee of the property, the legal title to which is in him as trustee, we submit that the decree is correct and proper.

Equity having assumed jurisdiction of the cause will retain it to the end, and will make such decree as conforms to the peculiar circumstances of each case, and until complete redress is afforded.

The justness and propriety of the decree in this cause being dependent upon *facts* proven at the hearing below, and the Chancellor, sitting at the hearing as both court and jury, with the right to pass upon the credibility of conflicting testimony before him, having rendered his decree upon that testimony, the Appellate Court should not, without great caution, disturb that decree, based as it is upon facts testified to by witnesses whose credibility is presumed to be known to the Chancellor. 7 Ohio St., p. 75; see case of

Solomon Towne vs. Nathaniel Grover, 9 Pick. R., p. 306, and authorities there cited.

THE CHIEF-JUSTICE delivered the opinion of the court.

The bill seeks to charge the specific property described with the price of lumber furnished by Doig & Geiger, and used in the construction of a dwelling-house for Thrasher. They allege that they refused to furnish the lumber to the contractor, but did furnish it at the instance of Thrasher and upon his express promise to pay for it, or to see that it was paid, and it is alleged that the lot on which the house was erected was in his possession, and that he had purchased it, but they do not know to whom the title was taken. Of this they pray a discovery.

Thrasher does not deny the correctness of the account of lumber furnished and put into the building, but says it was furnished to Carter, who had contracted to erect the house, and denies that he ever promised, before or after it was delivered, to pay for it except as a part of the contract price that might be due to Carter, and that Carter was over-paid when notice of lien was filed by Doig & Geiger. He discloses that the legal title was in himself " as trustee for his wife and children." He admits that he contracted with Carter for the erection of the house, and says he paid him for it.

The complainants, after the disclosure of the fact that Thrasher held the title as the trustee of his wife and children, without amending his bill so as to charge their interest, proceeded with the cause against Thrasher and obtained a decree against him " as trustee " for the amount due them, and that the decree was a specific lien upon the lot, and that it be sold to satisfy the lien.

The first objection to the bill is that it is a bill of discovery, and therefore it was improper to extend the decree

or to make a decree of the specific relief granted here. Every bill is in reality a bill of discovery, but the species of bill usually distinguished by that name is a bill for discovery of facts residing in the knowledge of the defendant, or of deeds or writings or other things in his custody or power, and seeking no relief in consequence of the discovery, though it may pray the stay of proceedings at law till the discovery be made, and is commonly used in aid of the jurisdiction of some other court. Mitford Ch. Pl., 53 ; 2 Barb. Ch. Pr., 101 ; 2 Story's Eq. Jur., §1483.

The bill in this case is not strictly a bill of discovery. Its purpose is to charge property with an indebtedness, and the disclosure it seeks may be legitimate to the end sought, as matter of evidence of facts within the knowledge of the defendant tending to prove the allegations of the bill. "The discovery and the allegations upon which it is based are not separate and distinct from the main object of the bill, but have a very obvious relation to it." Butler vs. Durham, 2 Kelly, Ga., 413, 420.

It is further insisted by appellant that because the statute has prescribed a method of enforcing such liens by an action at law the remedy in equity no longer exists, unless there be some impediment or difficulty in the way of the remedy at law. We cannot assent to the proposition that a remedy in equity once existing is taken away by the fact that a specific remedy at law has been created, unless the latter is expressly declared by the law to be the only remedy. 1 Story's Eq. Jur., §§33, 64i ; 5 C. E. Green, N. J., 79 ; 20 Grat., 672 ; 1 Heisk., 30 ; 3 Lansing, N. Y., 127.

Liens as for purchase-money of land and for improvements thereon are peculiarly the subjects of equity jurisdiction. 1 Story's Eq. Jur., §506.

The complainants allege in their bill that the land was purchased by Thrasher, and was in his possession, but they

were ignorant of the *status* of the legal title, and they therefore demand a disclosure upon that subject. The answer of Thrasher is the only evidence in the record as to that matter. He discloses that he has the legal title " as trustee for his wife and children." The complainants should, at that point, have amended their bill by making the wife and children parties to the suit, because the husband as trustee, without some proper authority from the wife, or on account of the children, has no power to encumber their property or estate. A married woman may contract for the benefit of her separate estate and thus charge it in equity, and the intent so to charge it may be shown by parol, and it has sometimes been held that it may be presumed by circumstances. Wells vs. Thorman, 31 Conn., 318 ; Withers vs. Sparrow, 66 N. Car., 129 ; 39 Ind., 201 ; 103 Mass., 560 ; 38 Ind., 482 ; 31 Ind., 92, 106 ; 20 N. Y., 247 ; and see authorities cited in 2 Story's Eq. Jur., 11 Ed., §1400 and notes.

In the case of Administrator and Administratrix of Smith vs. Poythress, 2 Fla., 92, the bill was filed to make the settled, separate estate of Mary E. Cheeseborough liable for the payment of debts contracted by Wm. B. Cheeseborough, who was acting agent on said estate for his wife, for supply and improvement on said estate, and which contracts were for the comfort, accommodation and advantage of his wife, and made with her assent and sanction. The debts were contracted for lumber for the erection of a dwelling-house and other buildings on the estate, and for goods for her benefit. The husband had given his notes for these debts. It was held that the judgment creditors of Cheeseborough, the husband, (who had obtained judgments on the notes against the husband, and execution had been returned unsatisfied,) could maintain a bill filed to subject the separate estate of the wife, which was liable in

equity for the payment of these claims. The court holds also also that if the husband had paid such debt he could charge the separate estate of his wife for it. The principle of that case is sustained in N. A. Coal Co. vs. Dyett, 7 Paige, 9; Montgomery vs. Eveleigh, 1 McCord, Chy., 267; Cater vs. Eveleigh, 4 Dess. Eq. R., 19.

In cases of that character we considered the equity rule as settled in this State by the case of Administrators of Smith vs. Poythress.

Where improvements such as houses, &c., have been erected upon her separate estate or property by her own contract, or that of her authorized agent, equity will charge the estate with the payment of the debt contracted therefor, not because of the statutory lien in favor of mechanics or builders, but because the natural implication is that if a married woman so contracts a debt she intends to pay it, and if she means to pay it, and has a separate estate, that seems to be the natural fund contemplated by both parties as furnishing the means of payment.

The equitable estate of minor children is not liable for any indebtedness growing out of their own contract. They have no capacity to bind themselves except for actual necessaries suitable to their condition, or by hiring for wages, or by some act required by law. (Ib., §240.) They are the wards of a court of chancery. To what extent their estates may be affected by contracts of their guardian or trustee may be considered when their rights are directly involved.

What has been said in relation to the contracts of married women and the *status* of their property, and the *status* of infants, shows that in order to affect their estates by legal proceedings they should be made parties and brought before a court of equity by proper process, and that a court of law cannot give the relief prayed.

We refrain, of course, from examining the testimony taken and upon which the decree was founded. The equitable owners of the lot not being before the court, it was premature to charge the property and decree its sale.

The necessary conclusion is that the decree is reversed, and the cause is remanded with directions that the bill may be amended, if the complainants are so advised, within such time as may be fixed by the court, by adding parties and otherwise within the scope and purposes of the suit, and if not so amended the bill be dismissed.